Gloria MARGADONNA

v.

OTIS ELEVATOR CO.

No. 86–275 Appeal.

Supreme Court of Rhode Island.

May 11, 1988.

Michael Fitzpatrick, Providence, for plaintiff.

Robert J. Quigley, Jr., Higgins, Cavanaugh & Cooney, Newport, for defendant.

## OPINION

SHEA, Justice.

This case is before the Supreme Court on appeal from a judgment entered in Superior Court. A jury rendered a verdict for the plaintiff Gloria Margadonna for injuries she sustained when she fell while stepping out of an elevator car that had not stopped level with the floor. Otis Elevator Company (Otis) maintains that the trial justice erred in allowing the testimony of the plaintiff's expert, by failing to grant the defendant's motions for directed verdict and new trial, and by improperly computing the interest into the final judgment. We affirm in part and reverse in part.

On September 25, 1980, plaintiff went to visit her husband, a patient at the Rhode Island Hospital. To get to the sixth floor plaintiff rode an elevator that was manufactured and maintained by Otis. When she stepped out of the elevator, she lost her balance, twisted her ankle, and fell to the floor. She immediately looked back at the elevator and noticed that it was "five or six inches above the landing of the floor." A witness on the sixth floor saw plaintiff fall

and also noticed that the elevator had not stopped at the floor level.

The plaintiff suffered injuries to her ankle and neck. The ankle injury was diagnosed as a "grade one sprain," but after years of therapy, plaintiff claimed that it never fully healed. The neck injury required use of a cervical-traction device for a period of two weeks and neck exercises for a period of one year. The plaintiff's physician testified that the neck and ankle injuries were caused when she fell out of the elevator.

The plaintiff testified that the pain from her injuries placed substantial limitations on her life. For example, she stated she could no longer do the housework and cleaning that she was able to do before the accident occurred and that she could no longer play tennis at all. Her husband also testified that she could no longer go for extensive walks or even play in the yard to any great extent with her grandchildren.

■ At trial plaintiff presented an expert witness who gave crucial testimony on the issues of negligence and causation. The defendant claims that the trial justice erred in allowing this expert to testify because plaintiff had violated Rule 33(c) of the Superior Court Rules of Civil Procedure by failing to name the expert in supplemental answers to interrogatories ten days prior to trial. The defendant also claims that the expert lacked sufficient qualifications to give opinion testimony. We disagree.

On August 13, 1982, defendant submitted interrogatories to plaintiff, requesting identification of all expert witnesses retained to testify at trial. On January 14, 1983, plaintiff replied that no experts had been retained. On February 19, 1986, plaintiff supplemented her interrogatories, naming an expert to be called at trial. That expert was never called. However, on the first day of trial, plaintiff filed amended answers to supplement her interrogatories listing another expert who eventually testified at trial.

Rule 33(c) requires that "[i]f the party furnishing answers to interrogatories shall obtain subsequently information which ren-ders such answers incomplete, amended answers shall be served not later than ten (10) days prior to the day fixed for trial." Rule 37(d) provides the court with two alternative sanctions for a violation of Rule 33(c): "[T]he court may enter an order prohibiting that party from introducing evidence as to any matter which ought to have been the subject of amended answers, or the court may in its discretion pass the case on such terms and conditions as are just."

Choosing the latter alternative, the trial justice offered to pass the case and reach it at a later date, which would comply with the ten-day period required under Rule 33(c). Defense counsel chose not to accept the trial justice's offer to pass the case. Rather, he stated, "I'm not asking that the case be passed. My motion is strictly a motion to exclude."

The defendant cites *Gormley v. Vartian,* 121 R.I. 770, 403 A.2d 256 (1979), to support its contention that the trial justice erred. In *Gormley* at the conclusion of the plaintiff's case, the plaintiff's counsel requested a continuance in order to locate an additional witness to the accident from which the case arose. Defense counsel objected on the ground that this particular witness was not listed in the plaintiff's answers to the defendant's interrogatories requesting the names of all witnesses to the accident. The trial justice held that the plaintiff was in violation of Rule 33(c) and the first sanction in Rule 37(d) precluded the witness from testifying.

Otis, we believe, has misinterpreted the court's analysis in *Gormley.* The issue was not whether preclusion of the witness's testimony was the more appropriate alternative. Rather the issue before the court was whether the trial justice's decision constituted an *abuse of discretion.* In a situation in which a rule provides two alternative sanctions and the trial justice chooses the one he or she believes to be the most appropriate one for the situation in question, this court is not likely to reverse on the ground of abuse of discretion. We did not do so in *Gormley.*

The defendant next argues that the trial justice abused his discretion by allowing plaintiff's expert who lacked sufficient specific expertise in the operation of elevators to testify. During a voir dire, this expert testified that he had never worked on, designed, or written inspection manuals on the operation of elevators. However, he is a professor of mechanical engineering at Southeastern Massachusetts University, and had worked as a consulting engineer. He is a member of the American Society of Mechanical Engineers, the Providence Engineering Society, and the Sigma X Research Society. Although he had no specific experience with elevators, he testified that he had specific experience with control systems that are "virtually identical" to the control system in elevators.

"[T]he question of whether a witness is qualified to express an expert opinion is a matter that is committed to the sound discretion of the trial justice, and the exercise of such discretion will not be disturbed on appeal absent a showing of abuse." *Mangasarian v. Gould*, 537 A.2d 403 (R.I.1988). "[A] trial justice does not abuse his or her discretion merely because he or she permits a witness to testify whose qualifications have not been shown to be extraordinary or superlative." *Id.* at 406 (citing *Rossilli v. Iacovelli*, 88 R.I. 456, 149 A.2d 709 (1959)). This engineer's expert qualifications may not have been "extraordinary or superlative," but they were certainly sufficient to allow the trial justice, within his discretion, to qualify him to give opinion testimony.

At the close of plaintiff's case, defendant presented a motion for directed verdict. Defense counsel argued that plaintiff had failed to satisfy her burden of producing sufficient material evidence to establish a prima facie case of negligence. The trial justice initially reserved judgment on the motion and later, after the jury returned its verdict, denied the motion.

In ruling on a motion for directed verdict, this court is bound by the same standards that govern the trial justice. We must review the evidence in the light most favorable to the nonmoving party without consideration of the weight of the evidence or the credibility of the witnesses. If there is evidence that supports the nonmoving party or upon which reasonable minds could differ, the motion should be denied. *Atlantic Home Insulation, Inc. v. James J. Reilly, Inc.*, 537 A.2d 126 (R.I.1988); *Brenner Associates, Inc. v. Rousseau*, 537 A.2d 120 (R.I.1988).

The trial justice correctly denied defendant's motion for a directed verdict. The plaintiff had alleged two theories of negligence: negligently failing to maintain the elevator and negligently failing to warn elevator users of the danger of the elevator stopping at position not level with the floor. The plaintiff's theory of negligence on the basis of failure to maintain the elevator was supported by evidence that defendant had notice that its elevator experienced "considerable trouble" with a mechanical problem described as "sticking," which can result in an elevator stopping at a position not level with the floor.[1] The plaintiff's expert gave the opinion that the malfunction that caused plaintiff's accident was caused by this "sticking" problem and would have been prevented by proper inspection and lubrication. The plaintiff's theory of negligence based upon a failure to warn was supported by evidence that defendant had notice of the potential for such a malfunction and that it placed no sign in the elevator or gave any warning to users of the elevator that such a problem might occur. The motion for directed verdict was therefore properly denied.

After the jury rendered its verdict defendant filed a new-trial motion that was denied. The defendant now argues that the trial justice overlooked, misconceived,

---

1. On the issue of notice plaintiff presented a booklet produced by defendant which discusses the operation of the elevator involved in the case. This booklet states:

"Considerable trouble has been experienced with the 6850 because the leveling rings frequently lift only halfway. Some leveling rings pause at this point and finally lift all the way. The ring should lift all the way without any pause."

or misconstrued material evidence. We do not agree.

The trial justice's decision on the motion narrates a careful and thoughtful review of all the material evidence presented at trial. The key issue was the credibility of plaintiff's expert that was disputed by the testimony of a defense witness who had practical experience working on elevators. The trial justice found both of these witnesses and their testimony credible. Following the guidelines set out in *Barbato v. Epstein*, 97 R.I. 191, 194, 196 A.2d 836, 837 (1964), for determining a motion for a new trial, the trial justice correctly ruled that because reasonable minds could arrive at different conclusions, it was his duty to leave the verdict alone.

■ The question of the computation of prejudgment interest in this case is a very interesting one. The precise issue has not been considered by this court.

The plaintiff had originally brought suit against both Otis and Rhode Island Hospital. The accident occurred on September 25, 1980. Just before trial, in February 1986, the hospital settled the claim against it for the sum of $7,500 in exchange for a joint tortfeasor's release. After trial, the jury awarded $20,000 less 15 percent comparative negligence—a net award of $17,000. The plaintiff urged the trial justice to compute the prejudgment interest (12 percent per annum) on the full amount of $17,000 and then deduct the $7,500 settlement figure. The defendant argued that the settlement figure should be deducted from the jury award before the prejudgment interest was computed. These different methods would produce very different results. To illustrate:

| Plaintiff's Calculation | |
|---|---|
| $ 17,000.00 | Verdict |
| ×      .6525 | % of interest |
| | (65.25 months' interest) |
| $ 11,092.50 | Interest |
| + 17,000.00 | Verdict |
| | |
| $ 28,092.50 | Total |
| −  7,500.00 | Settlement |
| $ 20,592.50 | Judgment |

| Defendant's Calculation | |
|---|---|
| $ 17,000.00 | Verdict |
| | |
| −  7,500.00 | Settlement |
| $  9,500.00 | Reduced Verdict |
| ×      .6525 | % of Interest |
| | (65.25 months' interest) |
| $  6,198.75 | Interest |
| +  9,500.00 | Reduced Judgment |
| $ 15,698.75 | Judgment |

Our Joint Tortfeasor Release Statute is a verbatim enactment of section 4 of the Uniform Contribution Among Joint Tortfeasors Act of 1939 (act). It provides that a plaintiff's entire claim is not terminated by settlement with one joint tortfeasor and also prevents double recovery by a plaintiff for the same injuries. *LaBounty v. LaBounty*, 497 A.2d 302 (R.I.1985); *Augustine v. Langlais*, 121 R.I. 802, 402 A.2d 1187 (1979). The act specifically provides that the release

"reduces the *claim* against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid." (Emphasis added.) G.L. 1956 (1985 Reenactment) § 10–6–7.

In *Augustine* the court held that "[t]he cases that have considered statutes identical to § 10–6–7 universally hold that amounts paid by settling defendants must be credited to the verdict amount returned against nonsettling joint tortfeasors." *Id.* at 804–05, 402 A.2d at 1189. Although we acknowledge that in *Augustine* the court was not addressing the matter of prejudgment interest, the clear language of the statute still applies. The prejudgment-interest statute G.L. 1956 (1985 Reenactment) § 9–21–10, also provides for the computation of prejudgment interest on *verdicts*. We have held that it, too, must be strictly construed. *Andrade v State*, 448 A.2d 1293 (R.I.1982); *Kastal v. Hickory House, Inc.*, 95 R.I. 366, 187 A.2d 262 (1963).

We conclude that the applicable statutes and our prior case law mandate that the settlement amount be deducted from the verdict before prejudgment interest is computed. In this way the nonsettling tortfeasor is not forced to pay interest on the amount of settlement.[2]

For these reasons the judgment appealed from is affirmed in part. That portion of the judgment concerning damages is vacated, and the case is remanded to the Superior Court for recomputation of damages consistent with this opinion.

KELLEHER, J., did not participate.

**2.** We have carefully examined the case of *American National Watermattress Corp. v. Manville*, 642 P.2d 1330 (Alaska 1982), cited by plaintiff but have concluded that the process followed in that case would not produce an acceptable result. There the court, concluding that the settlement figure represented both interest and principal, computed interest on the settlement at the legal rate from the time the claim arose to the date of settlement. It then deducted only the principal portion of the settlement from the verdict. In the case before us the settlement and the verdict occurred within a week of each other, and both occurred more than five-and-a-half years after the claim arose. This would result in a division of the settlement whereby two-thirds would be considered interest and only one-third would be considered principal. In our opinion, reduction of the judgment by such a small amount, would be unfair to defendant.