Christopher R. MERRILL et al.

v.

Edward TRENN, Jr., et al.

No. 96–602–Appeal.

Supreme Court of Rhode Island.

Feb. 18, 1998.

Michael M. Westerman, East Greenwich, for Plaintiff.

John W. Kershaw, Providence, Carolyn Ann Mannia, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

This case concerns the method that should be used to calculate the damages liability of alleged tortfeasors and to compute prejudgment interest thereon when the injured party has previously obtained a pretrial-settlement payment from one of the alleged tortfeasors and then enters into a later settlement with or obtains a verdict or decision against the other allegedly responsible parties.

## I

### Facts and Travel

On the afternoon of October 31, 1991, plaintiffs Christopher R. Merrill (Merrill) and James Pakuris (Pakuris) were passengers in an automobile driven by defendant Edward Trenn, Jr. (Trenn). Trenn and his passengers were motoring in an easterly direction on Route 102 in North Kingstown, Rhode Island, when their car overtook a school bus. The defendant Arthur Bennett owned the bus, which was registered to defendant Town of North Kingstown and oper-

ated by defendant Betty Williams (collectively the North Kingstown defendants). At this part of the road Route 102 is a four-lane highway. Trenn attempted to pass the school bus on the right while driving at a high rate of speed. Simultaneously the school bus began negotiating a lane change from the left to the right lane of the highway. The two vehicles collided—causing Merrill and Pakuris to sustain substantial personal injuries and property damage.

Merrill and Pakuris [1] filed suit in the Superior Court on June 18, 1993, against Trenn, Edward Trenn, Sr. (Trenn Sr.), the registered owner of the motor vehicle operated by Trenn,[2] and the North Kingstown defendants. Trenn and Trenn Sr. thereafter filed a cross-claim against the North Kingstown defendants.[3] On or about April 25, 1995, Trenn's insurer paid $25,000 to Merrill ($25,000 Trenn payment),[4] the limit of the per-person liability coverage under Trenn's automobile-liability-insurance policy. Because the Superior Court record does not include any of the settlement documents relating to the $25,000 Trenn payment and because the North Kingstown defendants' settlement agreement with Merrill makes no reference to any release that Merrill may have given to Trenn, the Superior Court had no basis for knowing whether Merrill had

released Trenn from all liability relating to the accident and, if so, what other claim-reduction terms may have been included in such release. Rather the only information the parties presented to the Superior Court was that Trenn's insurer had paid $25,000 to Merrill in settlement of Merrill's claims against Trenn.[5] Therefore, for purposes of this opinion only, we shall assume that Merrill's settlement with Trenn did not discharge the North Kingstown defendants from any liability to Merrill or include language that would reduce Merrill's claim against them by more than the $25,000 Trenn payment. We shall also assume that the North Kingstown defendants agreed to a settlement with Merrill independent of and without regard to whether Merrill had released Trenn from liability or included any other claim-reduction terms in any such release that would reduce the North Kingstown defendants' damages liability to Merrill beyond the $25,000 Trenn payment.[6] Accordingly we express no opinion regarding whether the North Kingstown defendants may pursue a contribution claim against Trenn in a future lawsuit.

After he received the $25,000 payment from Trenn's insurer, Merrill proceeded to court-annexed arbitration against the North Kingstown defendants. The arbitrator is-

---

1. The claims of Merrill and Pakuris differ only in the dollar amount of their damages and consequently in the amount of interest they seek. For clarity of illustration we henceforth refer only to Merrill and his claims. However, what we say here also applies equally to Pakuris after adjusting for the different numbers that are applicable to his situation.

2. The complaint against Trenn Sr. was dismissed without prejudice by an order of the Superior Court entered September 7, 1993 because the court found that Trenn, and not Trenn Sr., was the registered owner of the vehicle during the time in question.

3. Pursuant to a stipulation the Superior Court dismissed the cross-claim against the North Kingstown defendants on October 22, 1996, with prejudice.

4. Although a subsequent settlement agreement between Merrill and the North Kingstown defendants states that this payment was actually received "on or about December 16, 1994," Merrill represents in his brief, and respondents do not appear to dispute, that Merrill received the payment "on or about April 25, 1995." Because the

parties appear to rely on the later date for purposes of computing the interest in dispute here, we accept that representation.

5. Trenn did not file a brief, was not represented, and did not appear before this court.

6. The Uniform Contribution Among Tortfeasors Act, G.L.1956 § 10–6–7, provides, "A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but *reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.*" (Emphasis added.) *See also La-Bounty v. LaBounty,* 497 A.2d 302, 306–07 (R.I. 1985) (joint-tortfeasor release that includes language reducing the releasor's claim against the nonsettling tortfeasor by the pro rata share of the settling tortfeasor's liability reduces liability of nonsettling joint tortfeasor by the greater of the settling tortfeasor's pro rata liability share or the consideration paid by the settling tortfeasor).

sued a decision that attributed the accident to both drivers' negligence and assigned 35 percent liability to the North Kingstown defendants and 65 percent to Trenn. The arbitrator then determined that Merrill had sustained $66,250 in total damages as a result of the accident. Although the parties asked the arbitrator to assess interest on the awards, he declined, believing himself "not authorized" to do so under Rules 4 and 6 of the Superior Court's Rules Governing Arbitration of Civil Actions.

Rather than accept the arbitration award, Merrill filed a timely notice of rejection with the Superior Court, thereby allowing the case to proceed to a trial de novo. Before the parties were reached for trial, however, Merrill and the North Kingstown defendants entered into a settlement agreement (the North Kingstown settlement) on April 12, 1996, whereby the North Kingstown defendants agreed to pay Merrill for the balance of his total damages that were not covered by the Trenn payment. Although the rejected arbitration award had no binding legal effect, the parties agreed to adopt the arbitrator's $66,250 damages assessment as Mer-

rill's total damages.[7] As part of their settlement agreement Merrill and the North Kingstown defendants also agreed that the latter should pay some amount for "prejudgment interest" calculated at 12 percent per annum over the fifty-three-and-one-half-month period between the accident and the North Kingstown settlement, or 53.5 percent interest on their portion of Merrill's total damages.[8] However, the settling parties could not agree either on how the $25,000 Trenn payment should be credited in favor of the North Kingstown defendants or on the method of interest computation to be used.

Merrill contended that he should receive interest on his entire damages amount of $66,250 from the date of the accident to the date of the North Kingstown settlement, although he conceded that the North Kingstown defendants should obtain credit for $3,000 in interest that he says would have accrued on the $25,000 Trenn payment during the twelve months between Merrill's receipt of the Trenn payment and the date of the North Kingstown settlement.[9]

The North Kingstown defendants, on the other hand, advocated subtracting the Trenn

---

7. Although the parties' settlement agreement provided that "[t]he parties have agreed to a settlement of the claims of CHRISTOPHER R. MERRILL on the basis of the arbitrator's award," we infer that they did not agree to adopt the arbitrator's percentage-of-fault liability determination pursuant to which 65 percent of the liability was allocated to Trenn and only 35 percent to the North Kingstown defendants. We so conclude because 35 percent of $66,250 equals $23,187.50, whereas the North Kingstown defendants contended in their settlement agreement that the $25,000 Trenn payment should be subtracted from the $66,250 total-damages arbitration award, leaving "a net award in favor of CHRISTOPHER R. MERRILL of $41,250 plus prejudgment interest of 53.5%." Thus, if the North Kingstown defendants had agreed to settle on the basis of the arbitrator's determination that they were only 35 percent liable, they never would have contended in the parties' settlement

agreement that the net-damages award to Merrill after subtracting the Trenn settlement should be $41,250. Accordingly we conclude that notwithstanding the parties' unqualified statement that they agreed to a settlement of the Merrill claim "on the basis of the arbitrator's award," they only agreed to accept that portion of the arbitrator's award fixing Merrill's total damages at $66,250 and that they reached no agreement on any percentage-of-fault allocation between themselves and Trenn except insofar as the parties' agreement to credit the $25,000 Trenn payment toward the North Kingstown defendants' liability implicitly allocated their percentage-of-fault liability for purposes of the settlement.

8. Although prejudgment interest under G.L.1956 § 9–21–10 is normally computed as of the date of entry of judgment, the parties apparently also agreed to substitute the date of the North Kingstown settlement for this purpose. The Superior Court accepted this stipulation and it has not been challenged on appeal.

9. Merrill method:

| | |
|---|---|
| $66,250 | (Merrill's total damages) |
| +35,444 | (53.5% interest on $66,250) |
| 101,694 | (subtotal) |
| −25,000 | (Trenn payment) |
| −3,000 | (12% interest on $25,000 for the period April 1995 to April 1996) |
| $73,694 | (total judgment) |

payment from Merrill's total damages at the outset and then computing interest only on the difference (the North Kingstown method).[10] The two methods of interest computation produce different bottom-line results that are a little over $10,000 apart, representing a 16.4 percent swing in the settlement costs from the perspective of the North Kingstown defendants.[11]

Unable to agree on what method of interest computation should be used and on how the North Kingstown defendants' portion of the $66,250 total damages to be paid to Merrill should be calculated, the settling parties agreed to submit these questions to the Superior Court for its determination. Thus on September 16, 1996, Merrill filed a motion for entry of judgment praying that the court "enter a judgment for unpaid interest pursuant to R.I. Statute 9–21–10 and the attached agreement of the Parties * * *."[12] On October 15, 1996, the Superior Court issued a decision indicating that it would adopt a variation of Merrill's proposed computation. According to the Superior Court, interest should be calculated at 12 percent per annum on the total amount of Merrill's losses from the date of his injury (when the accident occurred and his cause of action arose) to the date of the $25,000 Trenn payment, or approximately forty-one and one-half months. At that point the Trenn payment would be subtracted from the total damages and interest would continue to accrue on the difference until the date of the final settlement, or twelve additional months (the Superior Court's initial method).[13]

**10.** North Kingstown method:

| | |
|---|---|
| $66,250 | (Merrill's total damages) |
| − 25,000 | (Trenn payment) |
| 41,250 | (subtotal) |
| + 22,069 | (53.5% interest on $41,250) |
| $63,319 | (total judgment) |

**11.** $73,694 (Merrill method) minus $63,319 (North Kingstown method) equals $10,375 (difference); and $10,375 divided by $63,319 equals 16.4 percent.

**12.** Although the parties purportedly submitted only the question of interest computation to the Superior Court, both the court and the parties treated Merrill's motion as one requesting "a decision made for pecuniary damages" under § 9–21–10 (the prejudgment-interest statute) and praying for entry of a judgment for the entire amount of the North Kingstown settlement after properly crediting the North Kingstown defendants with Trenn's $25,000 payment and after calculating interest on the remaining balance due from the North Kingstown defendants. Thus for purposes of this appeal we shall assume that the interest calculation here is the same as if a jury had returned a verdict against the North Kingstown defendants in the amount of Merrill's total damages for $66,250, and then the court proceeded on its own to calculate the effect of the earlier $25,000 payment to Merrill from Trenn and what prejudgment interest should be added to the judgment against the North Kingstown defendants—without evidence of or other knowledge regarding the existence or terms of any prior release.

**13.** The Superior Court's initial method:

| | |
|---|---|
| $66,250 | (Merrill's total damages) |
| × .415 | (41.5% interest up to date of Trenn payment) |
| $27,494 | (subtotal 1) |
| $41,250 | (balance after deducting the $25,000 Trenn payment from total damages) |
| × .12 | (12% interest for remaining period) |
| $4,950 | (subtotal 2) |
| $27,494 | (subtotal 1) |
| + 4,950 | (subtotal 2) |
| 32,444 | (total interest) |
| + 41,250 | (North Kingstown share of damages) |
| $73,694 | (total judgment) |

The North Kingstown defendants subsequently moved for reconsideration or rehearing on the ground that this court's opinion in *Margadonna v. Otis Elevator Co.*, 542 A.2d 232 (R.I.1988), controlled how interest should be calculated in this case. They posited that their proposed method of interest calculation accorded precisely with the method prescribed in *Margadonna* (the *Margadonna* method). The trial justice thereupon reversed his prior decision and directed entry of a final judgment in an amount consistent with the *Margadonna* method and with the North Kingstown defendants' position.

Merrill makes two arguments in his appeal to this court. First, Merrill suggests that the *Margadonna* method of calculating interest is unfair to a settling plaintiff and unwise as a matter of policy and that, therefore, that decision ought to be revisited and overturned. Merrill bids us to adopt an interest-computation rule similar to that espoused by the Alaska Supreme Court in *American National Watermattress Corp. v. Manville*, 642 P.2d 1330 (Alaska 1982) (*American Watermattress*). Second, Merrill contends that application of the *Margadonna* method of interest calculation violates constitutional equal-protection mandates.

After ordering the parties to show cause why this appeal should not be decided summarily, we conclude that no cause has been shown and that we can rule on the issues presented without further briefing and argument.

## II

### Standard of Review

Because this case involves the construction of various Rhode Island statutes and statutory policies, we review the Superior Court's decision de novo. *See Margadonna v. Otis Elevator Co.*, 542 A.2d 232 (R.I.1988) (interpreting Rhode Island joint tortfeasor stat-

ute); *Augustine v. Langlais*, 121 R.I. 802, 402 A.2d 1187 (1979) (same).

## III

### Analysis

#### A. *Competing Interest–Calculation Approaches*

In *Margadonna* the court addressed a factual situation in a posture similar to this one, except for one crucial difference: *Margadonna* involved a jury verdict against a nonsettling tortfeasor after the plaintiff had given a release to another alleged joint tortfeasor as part of a pretrial settlement with that party. In contrast to *Margadonna*, the Superior Court record in this case contained no indication that plaintiffs' earlier settlement included a joint-tortfeasor release.

The *Margadonna* plaintiff, Gloria Margadonna (Margadonna), injured her ankle and neck when she fell while exiting an elevator owned by Rhode Island Hospital (hospital) and manufactured by Otis Elevator Company (Otis). 542 A.2d at 232. She sued both parties, but just before trial Margadonna settled with the hospital for $7,500 in exchange for a joint-tortfeasor release.[14] *Id.* at 235. Otis, the remaining joint tortfeasor, elected to go to trial, and a jury returned a verdict against Otis for $17,000. *Id.* As here, the parties did not dispute that Margadonna was entitled to prejudgment interest in connection with any judgment to be entered against Otis on the jury's verdict, but they each urged different methods of interest computation with respect to the earlier settlement with the hospital.

Taking up the question as one of first impression, the *Margadonna* court held that under § 10–6–7 of the Uniform Contribution Among Tortfeasors Act (UCATA), the total consideration paid by an earlier-settling joint tortfeasor had to be deducted from the damages verdict before prejudgment interest

---

14. The *Margadonna* opinion does not indicate whether the joint tortfeasor's release given by the plaintiff to the settling hospital contained language providing for a reduction of the nonsettling defendant's liability by the hospital's pro rata share of the liability. Relying upon the court's decision to deduct only the settlement payment from the verdict, we assume either that the release contained no such language or that the settlement amount was greater than or equal to the hospital's pro rata share of the liability as provided for in the release.

could be computed. 542 A.2d at 236. The *Margadonna* approach thus accords with the suggested North Kingstown method. As the rationale for adopting its approach, the *Margadonna* court noted that "[i]n this way the nonsettling tortfeasor is not forced to pay interest on the amount of settlement." *Id.* The court also considered and expressly rejected a method of calculating prejudgment interest adopted earlier by the Supreme Court of Alaska in *American Watermattress, supra,* and championed by Merrill in this litigation (the Alaska approach). The *Margadonna* court concluded without elaboration that "the process followed in that case would not produce an acceptable result [and] would be unfair to defendant." 542 A.2d at 236 n. 2.

In *American Watermattress* the Alaska high court began its analysis with the basic premise that because of the time value of money, a pretrial-settlement payment by one of multiple alleged tortfeasors necessarily contains "both prejudgment interest and principal." 642 P.2d at 1344. The court then utilized the algebraic formula, $P = S/(R + 1)$,[15] to arrive at the principal component of the first alleged tortfeasor's payment.[16] The principal component was then subtracted from the verdict (or, as applied to the facts of this case, from the amount of the later settlement embodied in the judgment) and interest computed on the difference. *Id.* Thus, by disallowing a credit to any later-settling or nonsettling defendants for the presumed interest component of the first settlor's payment, the Alaska method more closely approximates the results obtained after applying the Merrill and the initial Superior Court approaches.[17]

### B. *Policy Considerations*

Our general civil prejudgment interest statute, G.L.1956 § 9–21–10, provides in pertinent part:

"Interest in civil actions.—(a) In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of

15. In this formula, P is the principal component to be calculated, S is the total amount of early payment, and R is the rate of statutory prejudgment interest for the relevant period.

16. The Alaska court arrived at this solution via the following algebraic steps:

1. Premise 1: $S = I + P$ (where S is the amount of settlement, I is the amount of interest, and P is the amount of principal)
2. Premise 2: $I = RP,$ (where R is the applicable rate of interest)
3. Solution: $S = I + P$ (premise 1)
   $I = RP$ (premise 2)
   $S = RP + P$ (substitute premise 2 into premise 1)
   $S = P(R + 1)$ (factoring out "P")
   $S/(R + 1) = P$ (factoring out "R + 1")
   $P = S/(R + 1)$ (formula)

17. As applied to this case, the Alaska approach would produce the following result:

Step 1: $R = .415$ (12% per annum statutory rate times 41.5 months between the date Merrill's cause of action arose and the date the $25,000 Trenn payment was paid)

Step 2: $P = S/(R + 1)$
$P = $25,000/(.415 + 1)$
$P = $25,000/1.415$
$P = $17,668$
$I = $25,000 - $17,668 = $7,332$

Step 3: Judgment $(J) = $ Total Damages—P; therefore,
$J = 66,250$ (Merrill's total damages)

| | |
|---|---|
| −17,668 | (principal component of Trenn payment) |
| 48,582 | (North Kingstown share of damages) |
| +25,991 | (53.5% interest on North Kingstown share) |
| $74,573 | (total judgment) |

action accrued, which shall be included in the judgment entered therein."

In *DiMeo v. Philbin,* 502 A.2d 825, 826 (R.I. 1986) (per curium), this court held that the prejudgment interest provided for in this statute is a peremptory addition to a judgment designed to serve as an incentive to early settlements. And even though prejudgment interest is not an element of damages, *id.,* the statute does "compensat[e] plaintiffs for waiting for recompense to which they were legally entitled." *Martin v. Lumbermen's Mutual Casualty Co.,* 559 A.2d 1028, 1031 (R.I.1989).

Section 10–6–7 of the Rhode Island UCATA, which has not been legislatively amended since the *Margadonna* decision,[18] provides in pertinent part, "A release by the injured person of one joint tortfeasor * * * reduces the [injured party's] claim against the other tortfeasors in the amount of the consideration paid for the release * * *." The aim of § 10–6–7 is to allocate liability fairly among any earlier-settling defendants and their jointly liable cotortfeasors who exercise their right to have their liability determined at trial or, as here, in a later settlement. *See* Uniform Contribution Among Tortfeasors Act, 12 U.L.A. 185, 187 prefatory note (1955 revision) (1996); *see also Margadonna,* 542 A.2d at 235 (our UCATA § 4 is "a verbatim enactment" of the 1939 UCATA version). The purpose of reducing the injured party's claim (and, therefore, the nonsettling alleged tortfeasor's liability), as the *Margadonna* court correctly noted, is to foreclose any double or excessive recovery flowing to the injured party and to protect the nonsettling defendant by ensuring that he "is not forced to pay interest on the amount of [the prior] settlement." *Margadonna,* 542 A.2d at 235–36; *see also Augustine,* 121 R.I. at 805, 402 A.2d at 1189 (§ 10–6–7 "proscribes double recovery").

■ Neither the civil-interest statute nor UCATA, however, indicates what method should be used to compute prejudgment interest on any eventual judgment against or later settlement with any alleged joint tortfeasors when, as here, there is no evidence in the trial court record of any joint-tortfeasor release given by the injured party to an earlier-settling alleged tortfeasor. And because neither party introduced evidence or stipulated to the existence of any release given by Trenn, § 10–6–7 is inapplicable. Therefore, to determine what interest-computation method to use in this situation, we look not to *Margadonna* but to the policies reviewed above that undergird the prejudgment-interest statute. *See In re Kyle S.,* 692 A.2d 329, 331 (R.I.1997) (after examining the statutory language, this court will apply the underlying policies of the statute to questions of interpretation); *F.H. Buffington Co. v. Hanrahan,* 622 A.2d 470, 472 (R.I.1993) ("[i]n construing statutory language, we have it as our duty to effectuate what the Legislature intended and give it a meaning consistent with its policies or obvious purposes").

To encourage early settlement of claims—the overriding goal of our prejudgment-interest statute—the injured party ought to be able to structure an early settlement with any willing alleged tortfeasor in a manner that enables him or her to be made whole, or as near thereto as possible, without providing him or her with a windfall or any excess recovery. It is certainly true that a tort plaintiff might elect to accept less than complete compensation in an early settlement with one or more alleged tortfeasors for any number of reasons. Such a settlement may simply reflect the price of a relatively quick resolution to litigation. Or it may recognize inter alia an alleged tortfeasor's limited liability exposure or inability to pay greater damages. But when the parties to a lawsuit believe that they can more or less accurately forecast the eventual comparative liability that will be assessed against the various alleged tortfeasors (including their prospective liability for interest) and those alleged tortfeasors are willing to settle for the full measure of their putative liability by entering into an agreement providing for such a pretrial resolution, the law should encourage the parties to do so.[19]

---

18. The model UCATA itself was amended subsequent to our adoption of the 1939 version. *See* Uniform Contribution Among Tortfeasors Act, 12 U.L.A. 185, 264 cmt. (1996).

19. Of course the injured party always assumes the risk that a jury or the court will assign a lesser measure of liability to the remaining alleged tortfeasors than he or she had forecast. Such a miscalculation, however, burdens only

However, *Margadonna*'s interest-computation method tends to impede this process by preventing an injured party who has given a joint-tortfeasor release to an earlier-settling defendant from ever recovering any prejudgment interest on the early-settlement funds. For example, let us assume that an injured party suffers $100,000 in damages at the hands of two hypothetical joint tortfeasors. If one tortfeasor agrees to an early settlement and pays $25,000 of the plaintiff's $100,000 in damages and additionally agrees to pay $5000 in interest accrued to date on that amount in exchange for a dismissal of the plaintiff's claims and a release, the plaintiff will still have $75,000 of as-yet-uncompensated damages. But under the *Margadonna* method of computing interest, the amount of the plaintiff's claim against the remaining hypothetical defendant will be reduced, per § 10–6–7, by the total amount of the consideration paid ($30,000) rather than by just the principal portion of the sum agreed to by the settling tortfeasor ($25,000). Thus, even if the plaintiff has perfectly forecast the comparative liability of each tortfeasor and eventually obtains a verdict awarding $100,000 in total damages and which also allocates 75 percent fault to the nonsettling defendant (consistent with the allocation of liability previously estimated by the plaintiff), the plaintiff will recover only a $70,000 judgment plus interest on that amount, instead of a $75,000 judgment plus interest. In contrast, a plaintiff who refuses to settle, takes both defendants to trial, and obtains the same verdict ($100,000 in damages shared by the defendants in a 75/25 proportion) will recover full compensation for his or her injuries as well as prejudgment interest on the entire $100,000 ($75,000 plus interest from one tortfeasor and $25,000 plus interest from the other tortfeasor). Thus, the *Margadonna* rule—though it stems from § 10–6–7's claim-reduction provision—could prove to be a disincentive to early settlements while providing an undeserved windfall in savings to any nonsettling alleged tortfeasor(s).

Some jurisdictions have defended this approach with the observation that "[p]laintiffs, by voluntarily settling and relinquishing their claim against one of the co-tortfeasors, gave up their right to interest on this amount in exchange for the certainty of the settlement." *Martinez v. Jesik*, 703 P.2d 638, 640 (Colo.Ct. App.1985). It is true, as we have also observed, that in many situations an injured party may well decide to compromise on the full measure of his or her claims in order to obtain an early settlement. However, increased litigation costs and the vagaries of trial outcomes can operate as a disadvantage to defendants as well as to plaintiffs. In the face of costly discovery and all the other potential expenses, delays, and uncertainties of a trial, including the risk of an unexpectedly large verdict (plus substantial interest accruing thereon), many an alleged tortfeasor will be amenable to a pretrial settlement for the entire amount of his or her potential damages liability plus interest thereon. Thus the policies behind the prejudgment-interest statute (and UCATA) call for a method of interest computation in cases like this one that will not impose disincentives on willing litigants to reach as early and as accurate a settlement as the parties can fashion.

### C. Adopting a New Interest-Computation Rule

We have taken a considered look at the interest-computation problem in this context. We believe that both the Alaska approach and the method initially employed by the Superior Court successfully protect nonsettling alleged tortfeasors from overcompensating the injured party while avoiding the disadvantage to a claimant, detailed above, resulting from *Margadonna*'s construction of § 10–6–7's claim-reduction mandate. Thus we accept Merrill's invitation in part and decline to extend our decision in *Margadonna* beyond its facts; that is, situations in which an injured party's claim against any nonsettling alleged tortfeasors must be reduced under § 10–6–7 by the total amount of the consideration paid by an earlier-settling alleged tortfeasor because of a release given by the injured party in favor of such an alleged tortfeasor which has been introduced into evidence or otherwise included in the trial court record. However, because the Superior Court's initial method of prejudg-

---

the injured party and does not negatively affect the earlier-settling or nonsettling alleged tortfeasors.

ment-interest computation offers a simpler and relatively more workable calculation while still meeting the policy goals of our prejudgment-interest statute, we conclude that this method is preferable to the commendable but perhaps more-difficult-to-administer Alaska approach.[20]

■ Accordingly we hold that when, as here, the Superior Court record fails to indicate (1) whether the claimant's earlier settlement with another allegedly responsible party included a joint-tortfeasor release in favor of the settling party or (2) what portion of that earlier-settlement payment constituted compensatory damages and what portion constituted interest, then, for the purposes of any later settlement with, verdict, or damages decision against a nonsettling alleged tortfeasor, the claimant's total damages should be reduced using the Superior Court's initial method of prejudgment-interest computation.

Pursuant to this method a nonsettling or later-settling defendant shall be charged with interest at the statutory rate (currently 12 percent per annum) on the entire amount of damages from the date on which the plaintiff's cause of action arose to the date of any prejudgment-settlement payment by an earlier-settling alleged tortfeasor. At that point the plaintiff's total damages shall be reduced by the full amount of the earlier payment and the nonsettling defendant charged with interest on the reduced balance of the remaining damages for the period from the date of the earlier payment to the date of entry of judgment on any settlement, verdict or decision. The interest charged for both periods shall then be added together and the sum added to the amount of the remaining alleged tortfeasors' post-reduction damages liability, which in this case equals the total damages minus the full amount of the earlier-settlement payment. Should multiple settlement payments be made (either by different alleged tortfeasors or by successive payments from the same alleged tortfeasor), interest shall be computed in a like manner for each relevant period such that any nonsettling alleged tortfeasor(s) are charged with interest only for those periods during which the plaintiff's damages remained uncompensated.

To illustrate by application to the facts of this case, the judgment to be entered against the North Kingstown defendants in favor of Merrill should be calculated in the following manner:

| | |
|---|---|
| $66,250 | (Merrill's total damages) |
| × .415 | (41.5% interest for period from the date the cause of action arose to the date of Trenn payment) |
| $27,494 | (subtotal 1) |
| $41,250 | (North Kingstown's share of damages—balance after deducting the $25,000 Trenn payment from $66,250 Merrill's total damages) |
| × .12 | (12% interest for twelve-month period from Trenn payment to entry of judgment) |
| $4,950 | (subtotal 2) |
| $27,494 | (subtotal 1) |
| + 4,950 | (subtotal 2) |
| 32,444 | (total interest) |
| +41,250 | (North Kingstown's share of damages) |
| $73,694 | (total judgment) |

**20.** The Alaska court's premise that an early-settlement payment should be deemed to incorporate both a principal and an interest component is a useful insight from a commercial-accounting standpoint. However, § 9–21–10, which provides only for the addition of simple prejudgment interest payable at the time of judgment, is not intended to attain the accuracy nor need it incorporate the complexity of more refined commercial lending and accounting practices. Our civil-interest statute does not call for such mathematical exactitude—requiring only that simple prejudgment interest be paid on the judgment amount.

Note that under this method of interest computation the sum of the damages paid by each alleged tortfeasor equals the total damages suffered by plaintiff: $25,000 (principal paid by Trenn's insurer) plus $41,250 (principal paid by North Kingstown defendants) equals $66,250. And the total amount paid by Trenn ($25,000) when added to the total amount (principal and interest) to be paid by the North Kingstown defendants ($73,694) equals $98,694, a sum that will fully compensate Merrill for all his damages and for interest thereon for those periods of time during which Merrill had to wait for the recompense he was due. Using the Superior Court's initial method of interest computation also prevents any possibility of a double recovery by limiting plaintiff to no more than full compensation. Of course, if Merrill had not settled with the North Kingstown defendants and if a factfinder had determined that the North Kingstown defendants' share of the total damages was less than $41,250, then the North Kingstown defendants would have paid only that lesser amount of damages (plus interest thereon)—and Merrill alone would have borne the consequences of his having misjudged the eventual verdict and of his having let Trenn off the hook for less than his allocable share of the damages.

We recognize that, depending on the circumstances of each case, it is possible to use different methods to compute prejudgment interest and to credit any remaining alleged tortfeasors for earlier settlement payments. We also recognize that several courts have followed our *Margadonna* rule when it has been deemed applicable. For example, the Nevada Supreme Court in *Ramadanis v. Stupak*, 107 Nev. 22, 805 P.2d 65, 66, 66 nn. 2, 3 (1991), followed our lead in rejecting the Alaska approach and echoed our conclusion in *Margadonna* that "the result can be unfair to the non-settling defendant." And Rhode Island's Federal District Court, in applying state law, has extended the *Margadonna* rule from the tort context to contract law. *See Commercial Associates v. Tilcon Gammino, Inc.*, 801 F.Supp. 939, 945 (D.R.I.1992). We believe that any disruption resulting from our adoption of this new method of interest computation when the parties settle without reference to any release given to an earlier-settling alleged tortfeasor is outweighed by the resulting improvement in the fairness of this methodology to all litigants and by the sanguine prospect that more tort cases will settle earlier than they otherwise would. This method also offers the added virtue of paralleling the method of interest computation that we recently endorsed in the context of underinsured-motorist-liability insurance coverage in *Metropolitan Property and Casualty Insurance Co. v. Tanasio*, 703 A.2d 1102 (R.I. 1997).

### D. *Note on Joint Tortfeasor Liability in General*

One last point needs to be addressed. The North Kingstown defendants point to the alleged "unfairness * * * of [their] being obligated to satisfy more than their pro rata share as responsible defendants." But in agreeing to settle on the basis of the $66,250 total damages to Merrill, with their portion of the total-damages liability to be determined by the court after crediting them with the $25,000 Trenn settlement and after calculating the amount of prejudgment interest they owe on the reduced balance of Merrill's total damages, the North Kingstown defendants agreed to a court-imposed apportionment of the total damages and to its assessment of prejudgment interest thereon. As noted, because Merrill rejected the arbitrator's decision, the arbitration award became immaterial except to the extent that the parties themselves agreed to settle using the arbitrator's total-damages finding as the starting point for determining the amount of the North Kingstown settlement. *See* Super. Ct. Civ. Arb. R. 5(d) ("A trial shall be conducted as if there had been no arbitration proceeding. No reference may be made to prior arbitration proceedings * * * without the consent of all parties"). If the North Kingstown defendants volunteered to shoulder more than their true share of liability (as determined by the arbitrator) as part of their settlement, they cannot now be heard to complain.

More importantly, they appear to claim a right to pay only their "fair share" of the damages. But as alleged joint tortfeasors this is a right that they would not have if

they were to be adjudged liable to plaintiffs after a trial. On the contrary, the North Kingstown defendants, if found to be joint tortfeasors with Trenn, would be severally liable for all of Merrill's damages—though of course Merrill can be made whole only once. But Merrill could have elected to sue only the North Kingstown defendants, leaving it to them to pursue contribution from Trenn, their alleged cotortfeasor. *See* 12 U.L.A. at 188 (1939 prefatory note) (injured plaintiff is "lord of his action"). Indeed the North Kingstown defendants' potential liability for all of Merrill's damages is the essence of joint and several liability and the raison d'être for the UCATA's allowing an action for contribution among joint tortfeasors that was unknown at common law. *See* §§ 10–6–3 and 10–6–4 (providing a right of contribution to a joint tortfeasor who has "by payment discharged the common liability or has paid more than his or her prorata share of the final money judgment"); *Hackett v. Hyson,* 72 R.I. 132, 136, 48 A.2d 353, 355 (1946); *Scherza v. Home Indemnity Co.,* 257 F.Supp. 97 (D.R.I.1966) (payment of an amount exceeding pro rata liability is a prerequisite to contribution); 12 U.L.A. at 187–88 (prefatory notes). Thus the North Kingstown defendants must ultimately bear the risk that Trenn's ability to pay or to contribute for his share of Merrill's total damages was practically restricted to the limits of his insurance coverage—a circumstance that, reading between the lines of the North Kingstown settlement, all the parties probably recognized. Because the North Kingstown defendants voluntarily agreed to settle without regard to whether Merrill had given a joint-tortfeasor release to Trenn and to "pick up the slack" by assuming a greater pro rata portion of the damages liability in their settlement than the arbitrator had determined, they cannot now be heard to complain when a court assesses prejudgment interest in line with that degree of agreed-upon liability.

### E. *Constitutional Challenge*

In light of our holding we do not reach Merrill's contention that the *Margadonna* rule violates constitutional principles of equal protection. We believe that the method of interest computation set forth herein treats all parties, whether settling or nonsettling, equally and fairly and provides an accurate mechanism with which to assess and discharge their legal rights and obligations.

### IV·

### Conclusion

For the foregoing reasons we sustain the plaintiffs' appeal, reverse the Superior Court's interest award, distinguish and limit the applicability of the interest-computation approach adopted in this court's *Margadonna* opinion to cases referencing or including joint-tortfeasor releases in the Superior Court record, and remand this case for entry of an amended judgment consistent with this opinion.