DECISION
The Plaintiff in this matter has moved for a new trial on damages or in the alternative, an additur to the jury's verdict of $10,000.
Plaintiffs claim for her injuries arises out of a collision which occurred early on Thanksgiving morning, 1992. At that time, 22 year old Candice Borges was driving a fiend home and a Middletown police cruiser unexpectedly pulled out in front of her causing an unavoidable accident. The Plaintiff testified that she was jarred back and forth and her neck was "immediately sore." She was treated and released from Newport Hospital's Emergency room with a diagnosis of "neck strain." The hospital record (Ex. 1) indicates that the Plaintiff complained of "mild" lateral neck discomfort."
During the course of Thanksgiving day Plaintiff suffered an extremely sore neck and back with pain radiating to her shoulders. The following day, November 27, 1992, she commenced treatment with a chiropractor. Dr. Kevin Donovan. He opined that Plaintiff's preexisting injury was aggravated by the accident and predicted that she would suffer mild to moderate pain on an intermittent basis into the future. Plaintiff, on cross-examination, testified that she "forgot" that she had been in an accident in 1990. From November 27, 1992 to September 3, 1993 Plaintiff visited Dr. Donovan's office approximately four times for various procedures. Her next and final visit to Dr. Donovan's office was over four years later on November 1, 1997.
During the November 1992 through September of 1993 time period, Plaintiff described herself as feeling "a lot worse" and enduring constant pain. She could no longer play tennis or run and her student teaching and bartending responsibilities became a great strain. Although Plaintiff earned a degree in elementary education from Northeastern University in June of 1995, she abandoned her teaching career in June of 1998 because physical demands made it a painful pursuit Plaintiff now performs office work for a real estate/financial group and she has problems sitting comfortably. The pain she attributes to the accident remains ever-present Plaintiff explains the gaps in her treatment as the result of a lack of health insurance and thus, funds.
Although the Plaintiff professes to have felt well prior to the accident, medical records which pre-date the accident indicate otherwise. On July 10, 1989, for example, she describes her major complaint in a patient history as "neck and lower back pain" aggravated by "bending over." (See Defendant's Ex. "B"). In other such forms from 1988 to 1989 she complains of "neck pain and tightening" aggravated by "sleeping and sitting for lengths of time," and, "frequent neck pain or stiffness," "frequent headaches," and "occasional pain between the shoulders." (See Defendant's C"). As recently as six weeks prior to the accident, Dr. Alan Post described the Plaintiff as "having a lot of problems with the lower back and neck . . . possibly due to bending over working with her 1st., 2nd., and 3rd. graders." (See Defendant's Ex. "B").
The jury in this matter was instructed, typically, that causation must be established and that a damage award, if any, was completely within the jury's discretion but with the purpose of providing fair and adequate compensation. The jurors were informed that the concept of injury includes not only accident and trauma, but exacerbation of a pre-existing injury to the extent such an injury is aggravated.
The Court's function in ruling on a motion for a new trial is to evaluate whether reasonable minds could differ in an interpretation of the evidence. In this case there was clear and unequivocal evidence that Plaintiff had significant neck and back pain years before the accident in controversy. Weeks before the accident she complained of neck and back pain "possibly due" to the physical demands of working with her young pupils. The jury apparently concluded that the accident exacerbated her pre-existing injury only to the degree reflected in the damage award. That award cannot be disturbed by the court because the Plaintiff is disappointed and feels she is deserving of more. In order to upset the verdict, the court's conscience must be "shocked" by the result. Because it is not an unconscionable award, the court must decline to alter it. Finally, the evidence in the record is clearly susceptible to varying interpretations. Since reasonable minds could differ in the assessment of the weight and credibility of the evidence, the motion for a new trial is denied.
There is an additional item of controversy in this case concerning the verdict and it relates to the calculation of pre-judgment interest. The defense attorney points out that in 1992 her client's insurance company engaged in the "unusual practice" of paying the medical bills of injured parties asserting claims against the town. In conformance with that policy, the defendant town, in 1993 and 1994, paid Plaintiff's medical bills in the amount of $3,340.00. The Defendant contends that the entire sum should be deducted from the damage award before interest is calculated. The Plaintiff concurs that $1,1215.00 should be credited but disputes the remainder of $2,125.00. The latter sum represents payments made by the Defendant to Beth Israel Hospital. The Court sustained the Defendant's objection to the admission of those hospital records because the affidavit was deficient. Thus, no part of the jury's award could have been based on the Beth Israel bill.
Our Supreme Court has ruled that the policy consideration behind the addition of pre-judgment interest to a judgment is the inducement of early settlements. Merrill v. Trenn, 706 A.2d 1305
(R.I. 1998); DiMeo v. Philbin, 502 A.2d 825 (R.I. 1986). Although the interest in itself is not an element of damages, the statute is designed to "compensate Plaintiffs for waiting for recompense to which they were legally entitled." Martin v. Mutual CasualtyCo., 559 A.2d 1028, 1031 (R.I. 1989). If a Defendant has advanced monies to an injured Plaintiff before litigation is commenced or resolved, that Defendant should not be required to pay again in the form of a judgment enhanced by interest. However, if the judgment did not incorporate the advanced sum, it should not be deducted. The jury here had no information or evidence that a Beth Israel hospital bill even existed. Thus, their verdict does not work the unfair result of compelling a Defendant to pay twice. The Court is of the opinion that the $2,125.00 amount should not, and cannot, function as a credit to the Defendant. The undisputed amount, $1,215.00, of which the jury had knowledge, will function as a credit to the Defendant, to be deducted from the damage award prior to the calculation of pre-judgment interest.
Counsel shall prepare an appropriate order for entry.