**LIBERTY MUTUAL INSURANCE COMPANY**

v.

**Bartolo TAVAREZ, Administrator of the Estate of Bartolo A. Tavarez.**

No. 98–581–Appeal.

Supreme Court of Rhode Island.

July 14, 2000.

---

Patrick Bernard Healy, Foster, for Plaintiff.

Gerald M. DeCelles, Smithfield, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

On December 18, 1993, seventeen-year-old Bartolo A. Tavarez (Bartolo), an insured motorist, was shot and killed while driving a motor vehicle. Bartolo's assailants, Ronald J. Steele (Steele) and Troy Perry (Perry), had been pursuing Bartolo in an uninsured vehicle when the fatal shot was fired. Both Steele and Perry pleaded guilty to second-degree murder and conspiracy to murder in connection with Bartolo's death, and both were sentenced to prison. Thereafter, Bartolo's father, Bartolo Tavarez (Tavarez or defendant), in his capacity as administrator of Bartolo's estate, made a claim upon the plaintiff, Liberty Mutual Insurance Company (Liberty Mutual or plaintiff), for uninsured-motorist benefits pursuant to the terms of an automobile insurance policy that named Bartolo as an insured. Liberty Mutual denied coverage, finding that Bartolo's injuries did not arise out of the ownership, maintenance, or use of an uninsured vehicle, as required by the uninsured-motorist provision of the policy.

On July 25, 1996, Liberty Mutual filed a complaint in the Superior Court requesting a declaration that Tavarez was not entitled to recover pursuant to the terms and conditions of the policy. On July 27, 1998, the court entered judgment in favor of Tavarez, declaring that the decedent's death arose out of the ownership, maintenance or use of an uninsured vehicle, pursuant to the terms of the automobile insurance policy. Liberty Mutual has appealed.

The sole issue for our determination is whether the Superior Court erred in declaring that defendant is entitled to recover uninsured-motorist benefits arising from the death of Bartolo, an insured operator, when the only connection between the uninsured motor vehicle and Bartolo's death was the fatal gunshot. While considering this issue, it is important to recognize that "[o]ur review of factual findings and conclusions of a Superior Court justice sitting without a jury is very deferential." *American Insurance Co. v. Donatelli Construction Co.*, 713 A.2d 237, 239 (R.I.1998). Further, "[w]e shall not disturb the findings of the trial justice on appeal unless he or she overlooked or misconceived material evidence or was otherwise clearly wrong." *Wickes Asset Management, Inc. v. Dupuis*, 679 A.2d 314, 317 (R.I.1996).

Before this Court, Liberty Mutual argued that there is an insufficient "nexus" between the use of the uninsured motor vehicle by Steele and Perry and the death of Bartolo for Tavarez to recover damages under the uninsured-motorist provision of the policy. The policy's provision for uninsured-motorist coverage requires that "[t]he owner's or operator's liability for these damages *must arise out of the ownership, maintenance or use of the 'uninsured motor vehicle.'* " (Emphasis added.) Similarly, the controlling uninsured-motorist statute, G.L.1956 § 27–7–2.1(a), requires that, other than for certain exceptions, no insurance policy covering "property damage caused by collision, bodily injury, or death suffered by any person *arising out of the ownership, maintenance, or use of a motor vehicle,*" shall be issued in Rhode Island unless coverage is provided for the protection of the insured against owners and operators of uninsured motor vehicles. (Emphasis added.)

This Court had occasion to interpret similar language in *General Accident Insurance Company of America v. Olivier*, 574 A.2d 1240 (R.I.1990). In that case, a woman was fatally shot by an uninsured motorist following an automobile accident involving the uninsured motorist's vehicle and the vehicle in which the woman had been a passenger. The policy provision for uninsured-motorist coverage in that case was identical to the Tavarez insurance policy in that it required that the injury to the insured " 'must arise out of the ownership, maintenance or use of the uninsured motor vehicle.' " *Id.* at 1242. To determine whether the co-administrators of the woman's estate in *Olivier* could recover under the uninsured-motorist provision, we looked to the decision of the Supreme Court of Florida in *Government Employees Insurance Co. v. Novak*, 453 So.2d 1116 (Fla.1984), in which the court construed the statutory language " 'must arise out of the ownership, maintenance or use' " as "not meaning 'proximately caused by' but as having a broader meaning that simply required some *nexus* between the motor vehicle and the injury." *Olivier*, 574 A.2d at 1242. (Emphasis added.) We noted that the *Novak* court "went on to say that it was unnecessary that the automobile be the instrumentality of the injury; neither would the type of conduct that

causes the injury of necessity be foreseeably identifiable with the normal use of the vehicle." *Id.* Following the view of the *Novak* court, we concluded that the defendants in *Olivier* could recover under the policy's uninsured-motorist provision.

Based upon our decision in *Olivier*, we are satisfied that the tragic accident [1] in the present case arose out of the use of the uninsured vehicle by Steele and Perry as a means of transportation to chase Bartolo, and as a shooting platform to bring about his murder. Inasmuch as he was murdered during a pursuit with an automobile driven by Steele and Perry, Bartolo's fatal injury was an unfortunate but foreseeable consequence both of the use of the automobile he was driving and the use of the automobile that Steele and Perry drove. As the Supreme Court of Florida held in *Blish v. Atlanta Casualty Co.*, 736 So.2d 1151, 1155 (Fla.1999),[2] "the actual source of the injury-causing blow is not dispositive—whether it came from a negligent driver in a passing vehicle or a violent group of passing thugs is not decisive." The deliberate and fatal injury to Bartolo, an insured motorist, was brought about by two thugs who were chasing him in an uninsured automobile. We are satisfied that the trial justice did not err in finding a sufficient nexus between the uninsured

---

**1.** We have held that the term "accident", includes intentional acts. *See Dias v. Cinquegrana*, 727 A.2d 198, 200 (R.I.1999); *General Accident Insurance Company of America v. Olivier*, 574 A.2d 1240, 1242 (R.I.1990). In *Olivier*, we cited *Novak*, in which the Supreme Court of Florida reasoned that viewed from the perspective of the injured party, an intentional shooting constituted "a most unexpected and unfortunate accident." *Olivier*, 574 A.2d at 1242.

**2.** In *Blish v. Atlanta Casualty Co.*, 736 So.2d 1151 (Fla.1999), the Supreme Court of Florida upheld its decision in *Novak*, holding that an insured's injuries from an attack while changing a tire on the side of the road were a reasonably foreseeable consequence of his use and maintenance of his automobile, and therefore arose out of the ownership, maintenance, or use of a motor vehicle, thus entitling the insured to personal injury protection

benefits. The relevant language in the *Blish* policy, however, can be distinguished from the language in the Tavarez policy, where the "use and maintenance" referred to an *uninsured automobile.* Therefore, although we adopt the reasoning of the *Blish* court with respect to the various policy considerations, we do not adopt the court's holding as the law of this state.

Moreover, we distinguish the present case from our recent decision in *Nationwide Mutual Insurance Co. v. Steele*, 747 A.2d 1013 (R.I. 2000), in which we held that a woman who had sustained personal injuries as the result of a car-jacking was not entitled to recover under the uninsured-motorist provision of her insurance policy because the injuries were caused by a pedestrian who had no connection to the operation of an uninsured motor vehicle.

motor vehicle and the fatal injury to Bartolo.

Further, we note, as did the *Blish* court, that "insurance companies were placed on notice at the time of enactment of [the uninsured motorist statute] * * * that the statute contemplates broad coverage." *Blish*, 736 So.2d at 1155. Certainly, *Olivier*, decided ten years ago by this Court, was a clear indication that § 27–7–2.1(a) contemplates broad coverage, because we specifically provided that "[n]othing contained in this opinion should be construed to prevent an insurance company from limiting its liability by appropriate exclusionary language so long as such language does not violate statutory policy." *Olivier*, 574 A.2d at 1243. Despite our holding, the language in the uninsured-motorist provision in the case at bar is exactly the same as the language in *Olivier*.

Accordingly, we are satisfied that the trial justice did not err in concluding that Bartolo's death arose out of the operation of an uninsured motor vehicle, thereby entitling his estate to recover the uninsured-motorist benefits provided for in the insurance policy.

For the foregoing reasons, we deny the plaintiff's appeal and affirm the judgment of the Superior Court. The papers of the case may be remanded to the Superior Court.