**LIBERTY MUTUAL INSURANCE COMPANY**

v.

**Bartolo TAVAREZ, Administrator of the Estate of Bartolo A. Tavarez.**

**No. 2000–405–APPEAL.**

Supreme Court of Rhode Island.

May 23, 2002.

Bernard Patrick Healy, Foster, for plaintiff.

Gerard M. DeCelles, Smithfield, Joseph C. Manera, Jr., Cranston, for defendant.

Present: LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, J.

When an insurer providing uninsured motorist (UM) coverage has denied its insured's claim and failed to arbitrate the same, choosing instead to litigate whether the UM claim is covered by the policy, can the court that declared the existence of coverage for the claim—and then ordered the parties to arbitrate it—enter a judgment for the insured that includes prejudgment interests and costs beyond the policy limits when it confirms the arbitrators' award? For the reasons explained herein, we answer this question in the affirmative.

The plaintiff, Liberty Mutual Insurance Company (Liberty), appeals from a Superior Court judgment that modified an arbitration award by adding prejudgment interest and costs over and above the limits of the applicable UM coverage. Liberty contends that the hearing justice erred in adding prejudgment interest and costs to the arbitration panel's award that exceeded the UM coverage in its insured's liability policy. After a prebriefing conference, a single justice of this Court ordered the parties to show cause why the appeal should not be summarily decided. Because neither party has done so, we proceed to decide the appeal at this time.

The underlying facts of this case are set forth in *Liberty Mutual Insurance Co. v. Tavarez*, 754 A.2d 778 (R.I.2000) (*Tavarez I*) and, thus, will not be repeated here. Suffice it to say that on December 18, 1993, Ronald J. Steele and Troy Perry shot and killed the deceased insured, Bartolo A. Tavarez (decedent). *Id.* at 779. Steele and Perry were chasing the decedent in an uninsured vehicle when they fired the fatal shots. *Id.* Liberty had issued a motor vehicle insurance policy, naming the decedent as an insured. *Id.* Thereafter, defendant Bartolo Tavarez, the decedent's father and administrator of his estate (insured), submitted a claim to Liberty seeking to recover UM benefits under the policy on account of his son's death. Liberty rejected the claim "finding that [the decedent's] injuries did not arise out of the ownership, maintenance, or use of an uninsured vehicle, as required by the uninsured-motorist provision of the policy." *Id.* The insured then requested arbitration, as provided for in the Liberty policy. In response, Liberty filed a declaratory-judgment action on July 25, 1996, seeking a declaration that the insured was not entitled to recover under the policy.

Eventually, the Superior Court ruled that the decedent's death arose out of the ownership, maintenance, or use of an uninsured motor vehicle and that the insured was entitled to recover under the UM provision in the policy. Liberty appealed that judgment to this Court. However, before Liberty docketed the appeal, the insured renewed his request for arbitration. Although Liberty sought to stay the arbitration, the Superior Court ordered it to proceed, but it stayed execution of any arbitration award until this Court's decision on Liberty's appeal of the declaratory judgment. Liberty then filed a motion with this Court to stay the arbitration, arguing that it would be "a waste of time" to arbitrate a matter that was pending on appeal before this Court. On October 14, 1999, we denied its motion to stay the arbitration. According to Liberty, it then offered the insured the available policy limit of $300,000, subject to the pending decision of this Court, but he rejected its offer.

On December 3, 1999, the arbitration panel found that "damages suffered by the

Estate of Bartolo A. Tavarez equal $402,152.50, exclusive of interest." However, the panel awarded the insured only $300,000, as this amount reflected the limits of the UM benefits under the policy. The award was also contingent upon this Court's decision in the pending appeal of the declaratory judgment.

In July 2000, we affirmed in *Tavarez I* the Superior Court declaratory judgment, concluding that the policy's UM provision covered the incident that caused decedent's death. We held that a sufficient nexus existed between the assailants' use of an uninsured automobile and the decedent's death because the assailants used their motor vehicle "as a shooting platform to bring about [the decedent's] murder." *Tavarez I*, 754 A.2d at 780. After this decision, Liberty paid the insured the sum of $300,000. Later, Liberty sought to confirm the arbitration award. The insured alternatively sought an entry of judgment that would add prejudgment interest and costs to the arbitration award.

At the Superior Court hearing, Liberty opposed the request for the addition of interest and costs. It argued that the Superior Court possessed no legal or factual basis to alter the arbitrators' award. Liberty suggested that it had not been found in breach of contract and that the declaratory-judgment action had settled only the question of its liability under the UM provision in the policy. The hearing justice, however, decided that, pursuant to *Skaling v. Aetna Insurance Co.*, 742 A.2d 282 (R.I.1999) (*Skaling I*) and *Asermely v. Allstate Insurance Co.*, 728 A.2d 461 (R.I. 1999), the insured was entitled to the addition of interest and costs to the award. As a result, the court awarded prejudgment interest in the amount of $210,000 for the period from December 18, 1993 (the date of the decedent's death), to October 29, 1999 (the date the arbitration hearing com-

menced). The court also awarded "post-judgment" interest on the subtotal of $510,000 for the period of October 29, 1999, to July 29, 2000 (shortly after this Court decided *Tavarez I*), which amounted to an additional $45,900 in interest. The court further awarded costs in the amount of $5,087.70. The total judgment amounted to $560,987.50, less the $300,000 already paid by Liberty. A judgment entered partially confirming the arbitration award, but also adding interest and costs.

On appeal, Liberty argues that the hearing justice erred in modifying the arbitrators' award by adding interest and costs. It contends that a Superior Court justice may not award interest at the time he or she confirms an UM arbitration award. Liberty additionally argues that modification of the arbitration award was improper because the insured's representatives failed to serve notice of the motion to modify the award within sixty days after the arbitrators rendered the award, as required by G.L.1956 § 10–3–15. Liberty submits that none of the statutory grounds for modifying an arbitration award were present in this case. It further points out that the insured never filed a counterclaim alleging a breach of contract. It contends that, under these circumstances, an award of interest was inappropriate because the insured never obtained a judgment for breach of contract.

Even if the Superior Court possessed the authority to add interest and costs to the arbitration award, Liberty further posits that such an addition of interest to the award was inappropriate in this case. It suggests that the holding of *Asermely* is inapplicable because *Asermely* did not involve UM benefits. It also argues that the imposition of interest under the guidelines of *Skaling I* was inappropriate because neither the arbitration panel nor the Superior Court found that Liberty had breach-

ed its contractual obligations under the policy. Because coverage for the insured's claim was uncertain, Liberty asserts, it was required to file a declaratory-judgment action to determine liability.

It also argues that, even if an award of interest was warranted, the hearing justice erred in calculating the interest. Liberty contends that interest should not have begun to accrue until the date it was notified of the claim, and henceforth to the date of final judgment. In regard to the imposition of costs, Liberty maintains, the hearing justice erred in including the fees for an expert witness within his assessment of costs. Expert witness fees, Liberty insists, are not included within the definition of costs.

The insured responds to these arguments by stating that the principles of *Asermely* and *Skaling I* are controlling here. He points out that these cases fashioned judicially created remedies designed to compensate insured claimants for the "stonewalling" and delaying tactics of insurance companies, such as those that Liberty deployed in this case, instead of promptly settling valid claims at or within the policy limits. Therefore, he contends, the hearing justice properly added interest and costs to the arbitration award. The insured also stresses that Liberty did not agree to arbitration, but instead the Superior Court had to order it to arbitrate after ruling on Liberty's declaratory-judgment action. Even after this order, Liberty continued to avoid arbitration and to do everything in its power to delay its progress. Under such circumstances, the holdings of *Asermely* and *Skaling I*, he argues, require that interest and costs be awarded in consequence of the insurer's refusal to settle at or within the policy limits or to arbitrate the claim in a timely manner.

■ This Court has "long recognized that the authority of the judiciary to 're-view * * * the merits of an arbitration award is extremely limited.'" *Town of North Providence v. Local 2334 International Association of Fire Fighters, AFL–CIO,* 763 A.2d 604, 605 (R.I.2000) (per curiam) (quoting *State Department of Mental Health, Retardation and Hospitals v. Rhode Island Council 94,* 692 A.2d 318, 322 (R.I.1997)). "Generally, '[a]bsent a manifest disregard of a contractual provision or a completely irrational result, the [arbitration] award will be upheld.'" *Id.* at 606 (quoting *Providence Teachers Union v. Providence School Board,* 725 A.2d 282, 283 (R.I.1999)); *see also Purvis Systems, Inc. v. American Systems Corp.,* 788 A.2d 1112, 1115 (R.I.2002). "[A]n arbitration award may be vacated when the arbitrators manifestly disregarded the law." *Prudential Property and Casualty Insurance Co. v. Flynn,* 687 A.2d 440, 442 (R.I. 1996). A "mistake of law," however, is not a ground for vacating an arbitration award. *Westminster Construction Corp. v. PPG Industries, Inc.,* 119 R.I. 205, 210, 376 A.2d 708, 711 (1977). This Court in *Westminster* explained that arbitrators would act in "manifest disregard of the law" if they understood and correctly stated the law, but proceeded to disregard it. *Id.* But other kinds of legal mistakes would not be grounds for overturning an arbitration award. *Id.*

■ As presented to the hearing justice, however, this case was not a mere confirmation of an arbitration award. The arbitration in question did not occur per the arbitration agreement in the policy, but only as a result of Liberty's filing of its declaratory-judgment action. ·Liberty refused to arbitrate this dispute as provided for in the insurance policy. Rather, it did so only after the Superior Court ordered it to do so in the declaratory-judgment action, requiring Liberty to honor the arbitration provision in the policy. Indeed,

after refusing its insured's contractually based demand for arbitration, Liberty filed the declaratory-judgment action to determine whether the contract entitled the insured to coverage under the circumstances of this case.[1] Upon the Superior Court's declaration of coverage, however, Liberty still refused to arbitrate the claim.[2] This prompted the hearing justice to issue an order compelling arbitration in this case, but staying the execution of any potential arbitration award until this Court issued its opinion in *Tavarez I*. Even then, Liberty tried to avoid arbitration, arguing for stays from both the Superior Court and this Court, and ultimately asking the arbitrators themselves to delay the arbitration.[3] Contrary to Liberty's suggestion, the Superior Court not only possessed the authority, pursuant to the declaratory-judgment statute, to enter the original judgment finding coverage and ordering arbitration, but that judgment also provided the hearing justice with the ability, through the court's retained jurisdiction over the declaratory-judgment action, to issue supplementary relief. In addition, the trial justice's order stayed the result of any arbitration pending this Court's decision on the coverage of the policy, clearly contemplating further court action under the declaratory-judgment suit.[4]

1.  In *Liberty Mutual Insurance Co. v. Tavarez,* 754 A.2d 778 (R.I.2000) (*Tavarez I*), we held that *General Accident Insurance Company of America v. Olivier,* 574 A.2d 1240 (R.I.1990) and G.L.1956 § 27-7-2.1(a) provided notice to insurance companies that UM coverage existed in cases such as this one involving vehicle-related shootings. We also noted that, although nothing in the *Olivier* case prevented insurance companies from utilizing exclusionary language to limit their liability, "the language in the uninsured-motorist provision in the case at bar [*Tavarez I*] is exactly the same language as in *Olivier.*" *Tavarez I,* 754 A.2d at 781. Given this background, it is clear that Liberty breached its UM contract when it denied coverage and refused to arbitrate its insured's UM claim. Indeed, given Liberty's previous failure to arbitrate the insured's UM claim, the hearing justice's declaratory judgment finding coverage and ordering arbitration under the policy amounted to such a ruling.

2.  For these reasons, we reject Liberty's suggestion that it voluntarily submitted to contractually mandated arbitration, thus avoiding any breach of contract. On the contrary, Liberty continuously refused to arbitrate the insured's claim, in violation of the policy. Ultimately, the hearing justice ordered arbitration to proceed, yet Liberty still continued to demur. Thus, for Liberty to suggest now that it voluntarily submitted to the arbitration in compliance with its contractual obligation to do so beggars reality. *Compare Skaling v. Aetna Insurance Co.,* 742 A.2d 282, 291 (R.I. 1999) (stating that a "party that *agrees* to submit a contract dispute to arbitration has not breached the contract"). (Emphasis added.)

3.  In addition, Liberty asserts that converting its filing of a declaratory-judgment action into a breach of contract action would deny it equal access to the courts. But Liberty bound itself in its own policy to arbitrate disputes concerning its insured's UM claims. Moreover, the breach of contract in this case occurred when Liberty denied coverage for its insured's UM claim and then refused to arbitrate the same, not when Liberty filed its declaratory-judgment action. Even a cursory inspection of the applicable case law would have turned up this Court's decision in *Olivier,* which clearly requires coverage for this type of UM claim. Thus, Liberty's suggestion that it initially denied coverage and refused to arbitrate because coverage was "uncertain" in these circumstances is without merit.

4.  Because the hearing justice's order explicitly stayed any arbitration results pending this Court's decision in *Tavarez I,* Liberty's argument that the insured failed to move within sixty days to amend the arbitration award misses the mark. The arbitration award could have no effect until this Court issued its decision in *Tavarez I,* and therefore the hearing justice's order served to stay all action to confirm or modify the arbitration award until that time. Thus, the motion to amend the award was timely because the insured filed it within sixty days of this Court's decision in *Tavarez I.*

■ Because the hearing justice retained authority over this case stemming from the original declaratory-judgment action, the declaratory-judgment act governed his actions after Liberty moved to confirm the arbitration award and the insured requested supplemental relief. General Laws 1956 § 9–30–8 of that act states in relevant part that "[f]urther relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief."

■ Given the plain statutory language that "[f]urther relief based on a declaratory judgment or decree may be granted whenever necessary or proper * * *," § 9–30–8, we are of the opinion that the hearing justice's award of interest to the insured constituted further relief in the declaratory-judgment action,[5] and that the hearing justice in this case retained jurisdiction to grant further relief to the insured by virtue of Liberty's original declaratory-judgment action. We therefore hold that the hearing justice committed no error in granting the insured's request to add interest to the award beyond the policy limits at the hearing to confirm or amend the arbitration award.[6] After all,

the issues pertaining to whether Liberty breached its contract in refusing coverage and in refusing its insured's request to arbitrate, as well as the insured's consequent entitlement to interest beyond the policy limits, were not before the arbitrators.

■ Moreover, the hearing justice's addition of interest to the arbitration award in this case is consistent with our prior cases on this subject. We are of the opinion that the principles announced in *Skaling I* are controlling here. In *Skaling I,* we had occasion to discuss the Legislature's intent when it enacted prejudgment interest statutes. We stated:

"We have recognized that the purpose of statutes that award prejudgment interest is the encouragement of early settlement of claims. * * * Such an outcome is clearly the legislative intent * * * [because if this Court were to refuse to affirm the grant of prejudgment interest] we would remove all incentive for an insurer to settle claims in a reasonably timely manner, even when the contract clearly requires coverage." *Skaling I,* 742 A.2d at 292.

We conclude, as the trial justice found, that Liberty repeatedly attempted to evade its responsibility to provide UM cov-

---

**5.** We note as an aside that this Court consistently has held that we will affirm a trial justice's ruling "when the reasons given by the trial court are erroneous in circumstances in which there are other valid reasons to support the order or judgment appealed from." *Gross v. State, Division of Taxation,* 659 A.2d 670, 671 (R.I.1995) (citing *Ambeault v. Burrillville Racing Association,* 118 R.I. 310, 315, 373 A.2d 807, 809 (1977)). *See also Levine v. Bess Eaton Donut Flour Co.,* 705 A.2d 980, 984 (R.I.1998) (holding that this Court may affirm a trial justice's decision on other grounds than those stated by the trial justice). Therefore, although the trial justice did not explicitly base his calculation of interest on the declaratory-judgment statute, we

hold that he possessed the authority to do so, and affirm his judgment on those grounds.

**6.** The insured suggested that Liberty has "failed to preserve for review those issues it seeks to raise here for the first time." However, he does not specify in detail which issues Liberty allegedly did not properly preserve for appellate review. Although Liberty may not have cited every applicable case to the Superior Court, it did contest the ability of the hearing justice to modify the arbitration award. It argued that the hearing justice lacked any grounds or authority to modify the award by adding interest. For this reason, we hold, Liberty properly preserved the issue for review.

erage to the insured in this case, and that in doing so it breached its contract. In the words of the hearing justice to Liberty's attorney: "[r]efusing arbitration, refusing to abide by the award, refusing to abide by the liability coverage. Tell me one good reason why I should not award the estate [the policy limits plus prejudgment interest and costs] under *Asermely* and *Skaling*." Liberty's conduct in this regard is even more egregious given that its policy required it to arbitrate disputes pertaining to UM claims, yet it refused to do so before and after the court ordered it to arbitrate. Therefore, the award of prejudgment interest in this case accords with our reasoning in *Skaling I.* We have stated repeatedly that it is the duty of insurers to settle claims promptly and in good faith when a policy covers such a claim. Indeed, when insurers attempt to evade their contractual responsibilities, as Liberty did here, they run the risk of incurring significantly higher penalties than a mere judgment for the policy limits plus prejudgment interest and costs. *See Skaling v. Aetna Insurance Co.,* op. at 28, 799 A.2d 997, ——, (R.I.,2002) (*Skaling II* ) (holding that when an insurance company intentionally has failed to investigate a UM claim sufficiently, or to subject the results of the investigation to cognitive review and evaluation, "the insurer has acted in bad faith and has opened itself up to a compensatory damage award, punitive damages and attorneys fees"—irrespective of the policy limits).

■ Because we hold that the hearing justice possessed the authority to add prejudgment interest and costs to the arbitration award based on the insurer's breach of contract in refusing coverage for this claim and in failing to arbitrate it in a timely manner, we next determine whether the hearing justice erred in his calculation of interest. We conclude that he did. If the insured is entitled to recover interest in this case, that right did not accrue until Liberty improperly denied the insured's request for it to provide UM coverage for the claim, after which Liberty refused to arbitrate the same. Thus, the insurer's wrongful denial of the UM claim started the interest clock running, not the tragic death of the decedent. This holding is consistent with our decisions in both *Skaling I* and *Skaling II,* and also with the general prejudgment interest statute, G.L. 1956 § 9–21–10, which provides, in relevant part, that "(a) In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon *from the date the cause of action accrued, which shall be included in the judgment entered therein.*" (Emphasis added.)

The accrual of prejudgment interest in this case from the date when the insurer wrongfully denied the claim, however, should not be misconstrued by insurers as an excuse to dither when presented with a UM claim. Although insurers are entitled to a reasonable opportunity to investigate and respond to a UM claim, the insurer's failure to do so within a reasonable period from its submission shall be deemed, at a minimum, a breach of contract, triggering the award of prejudgment interest from the date the insurer should have paid the claim. Moreover, if the Superior Court "[f]inds that there was a complete absence of a justiciable issue of either law or fact" raised by the insurer in denying the claim or in failing to respond to it within a reasonable period, G.L.1956 § 9–1–45, then "[t]he court may award a reasonable attorney's fee" to the prevailing insured in any civil action arising from the insurer's breach of contract. *Id.*

■ Here, the insured's entitlement to prejudgment interest—without regard to the policy limits—arose on May 3, 1996, the date that the insurer notified its insured that it was refusing to provide coverage for its UM claim under the policy, after which Liberty, in violation of the policy, failed to do so and failed to arbitrate voluntarily its insured's claim, as provided in the policy. Therefore, the trial justice erred in calculating interest from the date of the decedent's death in 1993. On remand the Superior Court should calculate interest at 12 percent per annum on the policy limits of $300,000, from the date when the insurer notified its insured that it would not be providing any coverage for its UM claim to the date Liberty paid $300,000 to the insured. It then should enter a judgment for the insured in the amount of $300,000 plus interest accrued thereon to the payment date, less the $300,000 paid, plus interest on any remainder due and still owing[7] from that payment date to the date a final judgment enters on remand after this appeal, plus allowable costs. Moreover, the trial justice erred in compounding the prejudgment interest owed by Liberty by awarding "post-judgment" interest on the prejudgment interest that it accrued to the arbitration date; therefore, we vacate that portion of the judgment. *See DiLuglio v. Providence Auto Body, Inc.,* 755 A.2d 757, 775 (R.I.2000) (holding that "we disfavor compounding the interest on monetary awards in a judgment when the Legislature has not specifically authorized it").[8]

■ On the issue of costs, the hearing justice erred, we hold, in ordering Liberty to pay the insured's expert witness fees as "costs."[9] "Costs are normally considered

---

7. Because "the payment [here $300,000] is first applied to the outstanding interest obligation and then to principal," *Connecticut Valley Sanitary Waste Disposal, Inc. v. Zielinski,* 436 Mass. 263, 763 N.E.2d 1080, 1087 (2002) (quoting *City Coal Co. of Springfield v. Noonan,* 424 Mass. 693, 677 N.E.2d 1141, 1143 (1997)); *see also Jorgensen v. Aetna Casualty & Surety Co.,* 769 P.2d 809, 813 (Utah 1988) (stating that the general or "United States" rule is that when a debtor makes a payment to a creditor, that payment is first applied to accrued interest, and then to principal), the "remainder" still due and owing after crediting the insurer with the $300,000 payment represents unpaid damages rather than unpaid interest. In other words, the $300,000 payment in this case was not a payment of the policy limits or a liquidation of the $300,000 damages that Liberty caused to its insured by not making this payment when it was due. Rather, it was a payment of the interest it owed on the $300,000 that was due from 1996 to 2000 plus a portion of the principal amount of $300,000. The insured is then entitled to prejudgment interest on the remaining portion of the $300,000 in damages that remained unpaid.

8. The case of *Merrill v. Trenn,* 706 A.2d 1305 (R.I.1998) is distinguishable from this situation because *Trenn* dealt with calculating prejudgment interest in a lawsuit involving two or more joint tortfeasors in which one or more of them settle with the plaintiff before a final judgment has entered against the remaining defendant(s). Here, we have only one defendant who has made a partial payment on a breach-of-contract debt before the court has entered a final judgment. Thus, the Superior Court on remand will calculate prejudgment interest on the remaining unpaid damages—after crediting Liberty with the $300,000 payment it made—by first crediting the payment against all accrued but unpaid prejudgment interest on the $300,000 damages incurred by the insured, and then using any remaining amount of the $300,000 payment to reduce the $300,000 in damages before awarding prejudgment interest on that remainder.

9. At oral argument, the insured's attorney suggested that the "costs" that the hearing justice awarded related to costs previously ordered by another hearing justice in connection with an expert deposition during the discovery phase of this case. After a careful review of the record, however, we conclude that the $5,087.70 that the hearing justice awarded in "costs" was not in any way relat-

the expenses of suing another party, including filing fees and fees to serve process. *Fees to pay expert witnesses would not be included in this definition of costs.*" *Kottis v. Cerilli*, 612 A.2d 661, 669 (R.I. 1992). (Emphasis added.)

### Conclusion

For these reasons, we conclude, the hearing justice did not err by confirming the arbitration award for $300,000 and then adding prejudgment interest to that award, plus costs, even though the arbitration award did not include these additional sums and even though their inclusion in the judgment caused it to exceed the policy limits. The hearing justice, however, erred in his calculation of that interest and in his award of expert-witness fees and other non-recoverable expenses as costs. Therefore, we deny Liberty's appeal in part and sustain it in part, affirm the judgment in part and vacate the judgment in part, and remand this case to the Superior Court for the recalculation of interest and costs consistent with this opinion. Thereafter, the Court shall enter a new judgment.

Chief Justice WILLIAMS did not participate.

ed to that deposition. Rather, the awarded "costs" covered various other trial-related expenses, including fees paid to the Providence police, an economist, a court reporter, a detective agency, and an arbitrator. On remand for entry of a new judgment, only those costs that can be recovered under G.L.1956 chapter 22 of title 9, and Rule 54 of the Superior Court Rules of Civil Procedure shall be included in the judgment.