METROPOLITAN PROPERTY AND
CASUALTY INSURANCE
COMPANY

v.

Colin BARRY.

No. 2003–478–Appeal.

Supreme Court of Rhode Island.

March 3, 2006.

Kevin M. Cain, Esq., for Plaintiff.

Steven M. Ballin, Esq., for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

In this case we address, hopefully for the last time, the appropriate calculation formula for prejudgment interest in an uninsured/underinsured motorist (UM) arbitration award. On November 9, 2005, the defendant-insured, Colin Barry (insured or defendant), came before the Supreme Court on appeal from a Superior Court judgment that confirmed an arbitration award of $49,125 in damages and a separate award of $8,351 in prejudgment interest against the plaintiff, Metropolitan Property and Casualty Insurance Company (plaintiff or Metropolitan), his UM insurance carrier. For the reasons set forth herein, we vacate the judgment of the Superior Court and remand for further proceedings in accordance with this opinion.

### Facts and Travel

On November 8, 1998, defendant was injured in a motor vehicle collision with an underinsured driver (tortfeasor). The tortfeasor was insured by Liberty Mutual Insurance Company (Liberty Mutual) for $50,000. On February 7, 2001, Metropolitan authorized defendant to accept a settlement offer from Liberty Mutual for the

limits of the tortfeasor's policy. The parties agreed to arbitrate the UM claim, and a three-member arbitration panel issued two separate awards. The first award set total damages at $99,125. Next, the total damages amount was modified to reflect the $50,000 payment made by Liberty Mutual, therefore yielding a net award of $49,125 against Metropolitan, exclusive of prejudgment interest. The panel's second award of $8,351 reflected the prejudgment interest *on the net award,* from April 25, 2001, the agreed-upon date that Metropolitan denied the UM claim, to October 15, 2002, the date of the arbitrator's award.

Metropolitan then sought confirmation of both awards in the Superior Court. The defendant filed a cross-petition seeking modification of the prejudgment interest award. The Superior Court granted Metropolitan's petition, confirmed both awards and denied defendant's cross-petition to modify the prejudgment interest award. The defendant appealed.

The case initially was assigned to the Court's summary calendar by a single justice of this Court. The parties were directed to appear and show cause why the issues should not summarily be decided. After oral argument, we issued an order declaring that cause had been shown and directed the case to proceed to full briefing and argument. *Metropolitan Property and Casualty Insurance Co. v. Barry,* 857 A.2d 761 (R.I.2004) (mem.). This Court also requested the parties and any interested *amici curiae*[1] to address the following issues:

"(1) Is it possible for arbitrators and for reviewing courts to apply the interest-calculation formula outlined in *Merrill v. Trenn,* 706 A.2d 1305, 1313 (R.I. 1998) to UM cases such as the one at

bar and to other UM cases of the kind that this Court faced in *Geremia v. Allstate Insurance Co.,* 798 A.2d 939, 941 (R.I.2002), yet still, " '[i]n those cases, [have] prejudgment interest at the statutory rate * * * begin to accrue on the date that the UM carrier denies the claim or fails to pay the same within a reasonable period after receiving notice from the claimant thereof?' " *Geremia,* 798 A.2d at 941. In other words, is it possible to harmonize *Geremia,* and the case of *Liberty Mutual Insurance Co. v. Tavarez,* 797 A.2d 480, 487 (R.I.2002), with the calculation of prejudgment interest that this Court prescribed in *Merrill,* 706 A.2d at 1313, and in *Metropolitan Property & Casualty Insurance Co. v. Tanasio,* 703 A.2d 1102, 1104 (R.I. 1997)? If so, how? If not, how should the interest-calculation formula outlined in *Merrill* be applied in UM cases such as the case at bar? As it was in *Tanasio,* as modified by *Geremia,* or by some other method?

"(2) Notwithstanding *Merrill, Geremia,* [*Liberty Mutual Insurance Co. v. Tavarez,* 797 A.2d 480 (R.I.2002) (*Tavarez II* )], and *Tanasio,* what is the fairest and best way to calculate prejudgment interest in cases such as this in which the tortfeasor's carrier pays the policy limits in settlement of the tort claim before the insured claimants own UM insurer denies his or her contractual claim for UM benefits because of the need to arbitrate or litigate a dispute over the total amount of damages suffered by the injured party?

"(3) Does an injured party's claim for UM benefits over and above any amount received from the tortfeasor or the tortfeasor's insurer include the amount of

---

1. We gratefully acknowledge the three *amicus curiae* briefs submitted by Defense Counsel of Rhode Island, Property Casualty Insurers Association of America, and the Rhode Island Trial Lawyers Association.

prejudgment interest (beginning on the date of the injury) that accrued on the underlying claim for damages against the tortfeasor(s) through the date of any settlement with the tortfeasor(s)? Does it also include the underlying claim for damages itself, less any payment received from the tortfeasor and/or the tortfeasor's insurer, *see Tanasio,* 703 A.2d at 1104, with interest accruing on this net damages claim from the date that the UM carrier either denies the claim or should have granted it? *See Geremia,* 798 A.2d at 941." *Barry,* 857 A.2d at 761–62.

We shall now address these questions and attempt to resolve, once and for all, these complex issues.

### Standard of Review

Generally, "the role of the judiciary in the arbitration process is 'extremely limited.'" *Aponik v. Lauricella,* 844 A.2d 698, 703 (R.I.2004) (quoting *Purvis Systems, Inc. v. American Systems Corp.,* 788 A.2d 1112, 1114 (R.I.2002)). This Court will overturn an arbitration award "only if the award was 'irrational' or if the arbitrator[s] manifestly disregarded the law." *Id.* However, in passing on an appeal from a judgment confirming or vacating an arbitration award, this Court is not without authority to make such orders "as the rights of the parties and the ends of justice require." G.L.1956 § 10–3–19. Because of the numerous UM arbitration cases that come before this Court concerning prejudgment interest in the uninsured/underinsured motorist context and the inconsistent results in those cases, we

deem the issue presented in this case—when and how prejudgment interest should be added to an arbitration award—to provide an appropriate occasion to issue such an order.[2]

The Byzantine nature of our jurisprudence in this important area of the law causes us to depart from what is our general practice with respect to arbitration awards, so that we can fashion a uniform rule that is in line with our oft-cited holding that the award of prejudgment interest is a ministerial act to be performed by the clerk without judicial intervention. *Barbato v. Paul Revere Life Insurance Co.,* 794 A.2d 470, 471–72 (R.I.2002).

Prejudgment interest is a creature of the Legislature. General Laws 1956 § 9–21–10 provides in pertinent part:

> "**Interest in civil actions.**—(a) In *any civil action* in which a verdict is rendered or a decision made for pecuniary damages, there *shall be added* by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon *from the date the cause of action accrued,* which shall be included in the judgment entered therein. Post-judgment interest shall be calculated at the rate of twelve percent (12%) per annum and accrue on both the principal amount of the judgment and the prejudgment interest entered therein. This section shall not apply until entry of judgment or to any contractual obligation where the interest is already provided." (Emphases added.)

(quoting *Town of Coventry v. Turco,* 574 A.2d 143, 146 (R.I.1990)). However, the need for a uniform rule to avoid protracted litigation and inconsistent results causes us in this case to depart from this general practice so that we definitively can settle this area of the law.

---

**2.** We do not retreat from the venerable principle that arbitration awards should be upheld " '[a]bsent a manifest disregard of a contractual provision or a completely irrational result.' " *Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections,* 707 A.2d 1229, 1234 (R.I.1998)

■ This Court previously has declared that prejudgment interest "is not an element of damages but is purely statutory, peremptorily added to the award by the clerk." *Barbato*, 794 A.2d at 472 (citing *DiMeo v. Philbin*, 502 A.2d 825, 826 (R.I. 1986)). The dual purpose of prejudgment interest is to encourage early settlement of claims and to compensate an injured plaintiff for delay in receiving compensation to which he or she may be entitled. *Martin v. Lumbermen's Mutual Casualty Co.*, 559 A.2d 1028, 1031 (R.I.1989).

This Court previously has declared that it is not the function of the Superior Court to add interest to an arbitration award at the time the award is confirmed. *See Paola v. Commercial Union Assurance Companies*, 461 A.2d 935, 937 (R.I.1983) ("Rhode Island statutory law limits a Superior Court justice's role concerning arbitration to either vacating or confirming the award."). However, we also have held that "arbitrators should add prejudgment interest to their awards unless the parties specifically provide otherwise by agreement." *Id.* We previously have recognized that arbitrators are vested with broad discretion to award prejudgment interest to an award; however, we are mindful that § 9–21–10 provides that prejudgment interest *shall* be added to the amount of damages in *"any civil action* in which a verdict is rendered or a decision made for pecuniary damages * * *."* (Emphasis added). We now declare that it is mandatory that prejudgment interest be added to arbitration awards in accordance with this decision.

Questions concerning prejudgment interest in the arbitration context and the manner and method of its computation have given rise to numerous appeals to this Court. What should be a ministerial act, peremptorily added to the award, has become anything but simple and straightforward in the arbitration context. Consequently, we are of the opinion that a uniform and mandatory formula for the computation of prejudgment interest in arbitration cases is long overdue. In the absence of a contractual provision that precludes or limits prejudgment interest in an arbitration award, prejudgment interest shall be awarded by the arbitrators in accordance with this opinion.

## Analysis

### I

### Prior History of Prejudgment Interest Computation

Before discussing the correct computation of prejudgment interest in UM arbitration claims, a review of Rhode Island law on this issue is useful. In *Metropolitan Property and Casualty Insurance Co. v. Tanasio*, 703 A.2d 1102 (R.I.1997), the Court addressed the proper method for calculating prejudgment interest in UM cases. In that case, the Superior Court hearing justice modified the arbitrator's award and formulated his own, three-step formula for computing prejudgment interest in the UM arbitration context. *Id.* at 1103. First, the insurer was required to pay interest on the full amount of the award until the insured received his medical payment; at which point "interest was to be computed on the difference between the total award and the medical payments[.]" *Id.* Thereafter, interest accrued on this reduced amount until the insured received a second payment, from the tortfeasor. *Id.* "At that time the balance due [the insured] was to be further reduced, and the interest was to be recomputed on the remaining [amount]" and interest was to accrue on that sum until the UM carrier paid the award. *Id.* This Court affirmed the judgment and concluded that the trial justice's method for calculating prejudgment interest was not unreasonable. *Id.* at 1104.

Next, in *Merrill v. Trenn*, 706 A.2d 1305, 1314 (R.I.1998), we extended the *Tanasio* formula to cases involving joint tortfeasors when the plaintiff settles his or her claim against one, but not all tortfeasors. We noted that the formula adopted in *Trenn*, "offers the added virtue of paralleling the method of interest computation that we recently endorsed in the context of underinsured-motorist-liability insurance coverage in [*Tanasio* ]." *Id.* The *Tanasio* prejudgment interest formula then became referred to as the *Trenn* formula, and will be so referred to in this opinion.

According to the *Trenn* formula, a non-settling or later-settling defendant is responsible for prejudgment interest at the statutory rate "on the entire amount of damages from the date on which the plaintiff's cause of action arose to the date of any prejudgment-settlement payment by an earlier-settling alleged tortfeasor." *Trenn*, 706 A.2d at 1313. At that point, the total damages shall be reduced by the earlier payment; with "the nonsettling defendant charged with interest on the reduced balance of the remaining damages" from the date of the partial payment to the date of the next payment, or the date of entry of judgment, as the case may be. *Id.* "The interest charged for both periods shall then be added together and the sum added to the amount of the remaining" net damage award. *Id.* In the case of multiple tortfeasors who settle at different times, we declared that "interest shall be computed in a like manner for each relevant period such that any nonsettling alleged tortfeasor(s) are charged with interest only for those periods during which the plaintiff's damages remained uncompensated." *Id.*

Our decision in *Trenn* reflected the policy behind the law of prejudgment interest: to encourage early settlement of a claim with a tortfeasor in a manner that enables the injured party "to be made whole, or as near thereto as possible without providing him or her with a windfall or any excess recovery." *Trenn*, 706 A.2d at 1311. On the other hand, when a plaintiff reaches an earlier settlement with a tortfeasor and proceeds against the remaining alleged tortfeasors, the injured party should not be precluded from recovering prejudgment interest on the entire amount of damages from the date the cause of action accrues. We declared in *Trenn* that the prejudgment-interest statute and the Uniform Contribution Among Tortfeasors Act, G.L. 1956 § 10–6–7, call for a method of interest computation "that will not impose disincentives on willing litigants to reach as early and as accurate a settlement as the parties can fashion." *Trenn*, 706 A.2d at 1312. We adopted the *Trenn* formula as "a simpler and relatively more workable calculation while still meeting the policy goals of our prejudgment-interest statute[.]" *Id.* at 1313. However, as is often the case, time marched on and the Court did not adhere to all aspects of the *Trenn* formula.

The next case of significance to this issue was *Liberty Mutual Insurance Co. v. Tavarez*, 797 A.2d 480 (R.I.2002) (*Tavarez II* ). In *Tavarez II*, the issue was whether prejudgment interest in excess of the UM policy limits could be ordered when the UM carrier had breached the contract with its insured by denying coverage and refusing to arbitrate the claim. *Id.* at 482. *Tavarez II* was decided as a breach of contract case, in which the Court applied the *Tanasio* and *Trenn* calculation formula to payment of the policy limits shortly after this Court's decision in *Liberty Mutual Insurance Co. v. Tavarez*, 754 A.2d 778 (R.I.2000) (*Tavarez I* ).[3]

---

**3.** In *Tavarez I,* we held that the insured was     entitled to benefits under the UM policy when

In *Tavarez II*, we directed that prejudgment interest accrued on the claim from the date that Liberty Mutual denied the claim until the date it paid the policy limits, at which point the payment would be deducted and prejudgment interest would accrue on that reduced amount until the date of judgment. *Tavarez II*, 797 A.2d at 488. The date that interest was held to begin to run in *Tavarez II* was not in accordance with our previous holdings.

In other words, in *Tavarez II*, we adhered to the *Trenn* formula for computing prejudgment interest when there is a partial payment, but we parted company with *Trenn* on the crucial point of when interest should begin to accrue. *Tavarez II*, 797 A.2d at 488.

In *Tavarez II*, 797 A.2d at 487–88, we declared that the partial payment must first be applied to prejudgment interest, then to principal, but that prejudgment interest began to accrue when the UM carrier wrongfully denied the claim and not on the date of the underlying incident. As the next case demonstrates, it is not possible to harmonize this part of our holding in *Tavarez II* with our decisions in *Trenn* and *Tanasio*.

Of final importance is *Geremia v. Allstate Insurance Co.*, 798 A.2d 939, 939–40 (R.I.2002), which, like the case at bar, concerned an insured who received a tortfeasor payment for the policy limits and then sought recovery from his own UM insurer. The arbitrators did not follow *Tanasio* or *Trenn* and calculated the net damages by subtracting the tortfeasor payment from the total damages and adding prejudgment interest on the reduced amount from the date of the injury.[4] *Id.* at 940. Of note, however, is the language in *Geremia* that may have added to the confusion surrounding the computation of prejudgment interest in cases like the case at bar.

In *Geremia*, we recognized that, although the *Trenn* and *Tanasio* formulas for computing prejudgment interest were similar, we previously had not required those formulas to be applied in the context of UM arbitration claims. *Geremia*, 798 A.2d at 941. We affirmed the judgment in *Geremia*, (notwithstanding that it did not comport with *Trenn*), but we took the opportunity to declare that in future cases the *Trenn* method of calculation of prejudgment interest should apply:

"We now require that the interest calculation formula outlined in *Trenn* be applied in all pending and future underinsured/uninsured motorist cases of this kind." *Id.*

If this had been the extent of our holding in *Geremia*, the present case may not

---

the decedent had been murdered by an assailant engaged in a deadly chase in an uninsured vehicle. *Liberty Mutual Insurance Co. v. Tavarez*, 754 A.2d 778, 780, 781 (R.I.2000). Liberty Mutual paid the policy limits and in *Tavarez II* argued that it was not responsible for prejudgment interest in excess of the policy limits. *Tavarez II*, 797 A.2d at 482.

4. In *Geremia v. Allstate Insurance Co.*, 798 A.2d at 939, 940 (R.I.2002), the plaintiff was paid the policy limits, $25,000 from the tortfeasor's insurer, and pursued a claim against Allstate through binding arbitration. The arbitration panel found plaintiff's total damages to be $31,800. They deducted the initial $25,000 payment for a net award of $6,800.

They added 73 percent interest to that amount (12 percent per annum) for a total award of $11,764. *Id.* The plaintiff sought a correction of the award in Superior Court contending, that the arbitrators should have computed prejudgment interest in accordance with our decision in *Trenn*. Because the arbitrators reasonably believed that the *Trenn* interest calculation formula did not apply to Geremia's claim and we concluded that this belief did not rise to the level of manifest error of law, we affirmed the judgment, but we simultaneously mandated the application of the *Trenn* formula in all future cases. *Geremia*, 798 A.2d at 941.

have found its way to the Supreme Court. However, we went on to declare in *Geremia:*

"In those cases, prejudgment interest at the statutory rate hereafter will begin to accrue on the date that the UM carrier denies the claim or fails to pay the same within a reasonable period after receiving notice from the claimant thereof." *Id.*

We issued our decision in *Geremia* on the heels of *Tavarez II,* in which, less than one month before, we declared that the "wrongful denial of the UM claim started the interest clock running, not the tragic death of the decedent." *Tavarez II,* 797 A.2d at 487. Thus, although the Court required that the *Trenn* formula apply in all pending and future UM arbitration cases, *Geremia,* 798 A.2d at 941, we deviated from *Trenn* and *Tanasio* with respect to when interest begins to accrue. However, the computation of prejudgment interest in an arbitration case, as in any civil action, should be a ministerial act capable of being carried out by an arbitrator without judicial intervention. *Barbato,* 794 A.2d at 471. We thus are convinced that a mandatory, clear and uniform rule is long overdue.

Our holdings in *Tanasio, Trenn* and *Tavarez II* reflect important policy considerations and an attempt to provide fairness to all interested parties. In *Tanasio,* we recognized that it was not unreasonable to require that prejudgment interest be computed on the total award from the date of injury until the first payment and then on the difference between the total award and the payment until the date of judgment. *Tanasio,* 703 A.2d at 1103–04. In such a situation, the injured insured's recovery would most approximate the tortfeasor's payment, as if he or she was adequately insured. *See Tanasio,* 703 A.2d at 1103. In *Trenn,* the focus was on fairness to a party who enters into an early settlement agreement while at the same time protecting a nonsettling tortfeasor from over-compensating the injured party. *See Trenn,* 706 A.2d at 1312–13. Equally significant, in *Tavarez II,* at least with respect to prejudgment interest in excess of the policy limits, we held that the UM carrier was responsible for prejudgment interest from the time it denied the claim or from a reasonable point in time after receiving notice of the claim. *Tavarez II,* 797 A.2d at 487. Although these policy considerations are appropriate and represent an attempt to balance the rights of all interested parties (the injured insured, an early settling tortfeasor, a judgment tortfeasor and, in the UM context, the UM carrier), we conclude that they cannot be reconciled.

Accordingly, in answer to the first question in the Court's order of April 22, 2004, *Barry,* 857 A.2d at 761–62, it is apparent to us that it is not possible, in cases such as the case at bar in which the injured insured receives a partial payment from the tortfeasor, to apply the interest-calculation formula outlined in *Trenn* and *Tanasio* that is computed from the date of injury, yet still adhere to our holdings in *Tavarez II* and *Geremia,* that prejudgment interest against the UM carrier shall "begin to accrue on the date that the UM carrier denies the claim or fails to pay the same within a reasonable period after receiving notice from the claimant[.]" *Barry,* 857 A.2d at 761 (quoting *Geremia,* 798 A.2d at 941).

Because we cannot harmonize these cases we proceed to address the next question in our order of April 22, 2004, "what is the fairest and best way to calculate prejudgment interest in cases such as this in which the tortfeasor's carrier pays the policy limits" before the UM carrier denies the claim and elects to proceed to arbitra-

tion to determine the total amount of damages suffered by the injured insured? To do so, however, we first must address the remaining questions in the above-noted order:

"(3) Does an injured party's claim for UM benefits over and above any amount received from the tortfeasor or the tortfeasor's insurer include the amount of prejudgment interest (beginning on the date of the injury) that accrued on the underlying claim for damages against the tortfeasor(s) through the date of any settlement with the tortfeasor(s)? Does it also include the underlying claim for damages itself, less any payment received from the tortfeasor and/or the tortfeasor's insurer, *see Tanasio,* 703 A.2d at 1104, with interest accruing on this net damages claim from the date that the UM carrier either denies the claim or should have granted it?" *Barry,* 857 A.2d at 762 (citing *Geremia,* 798 A.2d at 941).

We approach this analysis mindful of the need for a prejudgment interest formula in UM cases that is certain and fair and lends itself to a ministerial computation.

## II

### Proper Prejudgment Interest Formula in UM Cases

At what point does an injured party's right to prejudgment interest accrue in respect to a claim against the insured's UM insurer? One of the *amici,* Defense Counsel of Rhode Island, contends that a UM carrier "has no knowledge that a claim even exists until such time that the insured's damages are adjudged." Similarly, in its *amicus curiae* brief, the Property Casualty Insurers Association of America, while recognizing "a melding of contract and tort principles" when UM benefits are at issue, argues that an injured insured's cause of action against the

tortfeasor and the UM carrier "are separate and distinct, and are often governed by separate rules regarding the imposition of prejudgment interest."

The Rhode Island Trial Lawyers Association (Trial Lawyers) in its *amicus* brief to this Court, recognizes the competing policy concerns of the insured and his or her UM carrier and argues in favor of a uniform and consistent rule that removes the uncertainty surrounding interest in UM arbitration cases. The Trial Lawyers urge us to apply existing law, as set forth in *Trenn, Tanasio* and *Tavarez II,* and hold that the coverage that a UM carrier contracts to provide includes prejudgment interest from the date of the injury. The Trial Lawyers contend that this rule "best approximates the compensation due an injured plaintiff had the tortfeasor been adequately insured." We agree with this reasoning because we are satisfied that, although UM cases may present "a melding of contract and tort principles," the contractual duties of the UM carrier are set forth in the insurance policy and begin at the date of the injury.

■■■ Rhode Island's uninsured motorist statute, G.L.1956 § 27–7–2.1(a), requires that a UM policy provide "for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles * * *." The insurance policy in effect in this case provided that Metropolitan would pay damages for bodily injuries arising out of the ownership, maintenance, or use of an uninsured vehicle that the insured is *"legally entitled to collect* from the owner or driver of an uninsured highway vehicle." (Emphasis added.) In this state, an injured plaintiff who recovers damages *in any civil action,* is *legally entitled to collect,* both pecuniary damages, and "interest at the rate of

twelve percent (12%) per annum thereon from the date the cause of action accrued[.]" Section 9–21–10(a).[5]

■ Thus, we are of the opinion that an insured "is legally entitled to collect" prejudgment interest from the date the cause of action accrues, which we hold is the date of the injury. We therefore deem "the fairest and best way to calculate prejudgment interest in cases such as this," *Barry,* 857 A.2d at 762, to be that method first enunciated in *Tanasio,* 703 A.2d at 1104, and reaffirmed in *Trenn,* 706 A.2d at 1312. Accordingly, in all pending and future UM arbitration cases, prejudgment interest shall accrue on the total damages fixed by the arbitrator(s), computed from the date of injury to the date of any partial payment; at which point the partial payment shall be deducted from the first calculation and prejudgment interest shall accrue on the reduced amount from the date of the partial payment to the date that the judgment is satisfied.

Under this method, any total damages ascertained in a UM arbitration case will accrue prejudgment interest from the date of the injury until the date of any partial payment; and, after that calculation is made by the arbitrator(s), prejudgment interest shall continue to accrue on the balance until the judgment is paid.

We are satisfied that this formula, although a departure from *Tavarez II* as followed in *Geremia,* best harmonizes the policy goals of (1) promoting swift settlement and (2) compensating the insured for any delay in benefits that the insured, who purchased the UM policy, is legally entitled to collect.

Although we acknowledge the juxtaposition of tort principles and contract law in the framework of uninsured motorist insurance, we are satisfied that because, as Metropolitan argues, a "UM carrier is liable in contract to pay UM benefits pursuant to the terms of its contract," a mandatory rule that the prejudgment interest clock starts at the time of the incident, is fair to both sides. Such a rule protects the injured insured by encouraging early settlement or providing for prejudgment interest in the event of delay, while at the same time recognizing the contractual rights of the UM carrier.

Under the terms of the insurance policy, the UM carrier may decide to negotiate with its insured and make an offer of settlement early in the process. This option is particularly relevant when the tortfeasor is uninsured, or when, as here, the tortfeasor's insurer offers the policy limits, or when, because of the extent of the injuries, it is obvious the tortfeasor's policy will provide inadequate compensation. The UM carrier has implicitly agreed in the contract, which it drafted, to take into account these possibilities.

Before this Court, Metropolitan has argued that interest should not accrue until the claim is denied because, it contends, the claim does not arise on the date of the accident. We respectfully disagree. Although at the time of the injury the UM carrier is not required to pay the claim and has every right to investigate the circumstances of the incident giving rise to dam-

---

5. Pursuant to G.L.1956 § 9–21–10(a), in a civil action for damages arising from personal injuries, as in any other civil action, prejudgment interest is computed "from the date the cause of action accrued, which shall be included in the judgment entered therein." The cause of action accrues on the first date an injured party has a right to seek judicial re-

lief. *Cardi Corp. v. State,* 561 A.2d 384, 387 (R.I.1989). Prejudgment interest begins to run when the action accrues for purposes of the statute of limitations. *See Castrignano v. E.R. Squibb & Sons, Inc.,* 900 F.2d 455 (1st Cir.1990) (The statute of limitations governs when a civil action accrues for purposes of computing prejudgment interest.).

ages, its contractual obligation to pay the claim is controlled by the terms of the policy. The extent of plaintiff's damages may not be ascertained or indeed ascertainable on the date of the accident; but that does not alter the obligation of the insurer to pay all that the insured is *"legally entitled to collect* from the owner or driver of an uninsured [or underinsured] highway vehicle." In this state, the injured insured legally is entitled to collect prejudgment interest from the date the cause of action accrues. Section 9–21–10.

In *Skaling v. Aetna Insurance Co.*, 799 A.2d 997 (R.I.2002), this Court held that insurers "doing business in Rhode Island have an implied obligation to promptly and fully respond to their insured" and this responsibility also includes a duty "to investigate a claim and to subject that claim to appropriate review." *Id.* at 1010. This assessment must occur *before* the carrier refuses to pay a claim. *Id.* Insurers must deal with their insureds in good faith and by fair dealing and must have a lawful basis to deny the claim or be subject to tort liability for bad faith. *See id.* at 1011. Further, the insurer is "obliged to engage in settlement discussions in an effort to relieve the insured from the burden and expense of litigation." *Id.* In light of these well-established principles, we have no hesitation declaring that prejudgment interest in the UM context begins to accrue on the date of the injury.

By its terms, the policy in effect in this case anticipates that the injured party and Metropolitan will reach an agreement about whether the claimant is "legally entitled to collect damages" and about the amount of damages. Failing such an agreement, the dispute may be resolved by arbitration upon the written consent of both parties. Only if one party declines arbitration is the insured required to file suit against the tortfeasor *and Metropoli-*

*tan*—or against Metropolitan in the event the driver is unknown. The policy requires that the insured promptly notify the insurer of the claim. The insurer then has several options: it may elect to settle the claim early-on, or to proceed to arbitration, or to decline coverage, thereby forcing its insured to institute litigation. Consequently, when faced with a claim for UM benefits, the carrier is free to set its own course and may not seek a safe harbor against prejudgment interest by declining to settle a legitimate claim or requiring its insured to first proceed against the tortfeasor.

Moreover, our review of the policy in this case reveals that the insured also has contractual obligations, including the duty to notify Metropolitan "as soon as possible of an accident or loss." The insured also must cooperate with the carrier "in every effort to investigate the accident or loss, settle any claims and defend the insured." Under the terms of the policy, Metropolitan may require the insured "to take appropriate action to preserve [his or her] right to recover damages from any other person responsible for the bodily injury." It also has subrogation rights against other responsible pockets. Accordingly, we are satisfied that under the terms of its contract Metropolitan has extensive protections, including the insured's obligation to provide it with prompt notice and full cooperation in its investigation of the claim.

Therefore, in answer to question 2, as set forth in *Barry*, 857 A.2d at 762, we are of the opinion that a rule requiring that prejudgment interest begins to accrue on the date of injury and continues until the date the UM carrier pays the claim, subject to reductions for any partial payment(s) consistent with our holdings in *Trenn* and *Tanasio*, "is the fairest and best way to calculate prejudgment inter-

est" in UM arbitration claims, and we so order.

### Conclusion

For the foregoing reasons, we vacate the judgment of the Superior Court and direct the entry of a new judgment awarding the defendant, Colin Barry, prejudgment interest in accordance with this opinion.

The case is remanded to the Superior Court.